## ASHLEY HAMILTON *versus* JOHN ELLIOT.

Where the tenant in a writ of entry has disclaimed all title to the demanded premises, both he and his subsequent assignees will be ever afterwards estopped to set up against the demandant and his subsequent assignees any claim to the land, which the tenant may have had at the time of the disclaimer.

And an agreeement, made subsequently to the disclaimer by the demandant, to purchase all the right of the tenant in the land, will not set the estoppel at large.

THIS was a writ of entry, in which the demandant counted upon his own seizin of a tract of land in Keene, and upon a disseizin by the tenant. The cause was submitted to the decision of the court upon the following facts.

Benjamin Bemiss, senior, being seized of a parcel of land, of which the demanded premises is part, on the 10th January, 1810, conveyed the same to Abel Blake in fee and in mortgage.

On the 30th July, 1812, the said Bemiss, senior, conveyed the same land to Samuel Hamilton and Benjamin Bemiss, junior, subject to the said mortgage with warranty.

On the 3d September, 1813, John Elliot and Aaron Appleton, having commenced an action against Benjamin Bemiss, sen. caused the said tract of land to be attached,

and having recoverd a judgment for $42 52, on the 26th October, 1813, caused their execution to be extended on part of said tract marked A on the plan, which was appraised at $49 40 " exclusive of an incumbrance of $423," and the extent was made " subject to said incumbrance."

On the 25th November, 1813, the said Elliot and Appleton having commenced another suit against Benjamin Bemiss, senior, caused the residue of said land mortgaged to Blake as aforesaid to be attached, and having obtained an execution extended the same on 22d November, 1814, upon another parcel of the said land mortgaged as aforesaid, marked B on the plan.

In October, 1814, Elliot and Appleton entered upon the land upon which their said executions had been extended, and have ever since held the same.

PLAN.

N.

S.

On the 4th January, 1815, Elliot and Appleton paid to Blake the amount due on said mortgage, and took an assignment of it by deed from Blake to them.

On the 27th of February, 1815, S. Hamilton and B. Bemiss, jun. demanded of Elliot and Appleton, in a writ of entry, the whole lot, and at October term, 1815, the tenants in said writ of entry, as to all the land west of the two parcels, upon which their executions had been extended marked on the plan A and B, filed a disclaimer,

and as to the said two parcels they pleaded the general issue. The land disclaimed is marked C on the plan, and is the land demanded in this suit. The said general issue was tried and found for the tenants.

On the 13th October, 1815, Samuel Hamilton conveyed his undivided half of the whole tract to Silas Ball and the demandant.

On the 25th October, 1815, and before the trial of the issue abovementioned between S. Hamilton and B. Bemiss, jun. and Elliot and Appleton, an agreement was made as follows :—

"This agreement, made this 25th October, 1815, by and between John Elliot and Aaron Appleton, &c. of the first part, and Silas Ball, Ashley Hamilton and Benjamin Bemiss, jun. of the second part, witnesseth, that the said John and Aaron, in consideration, &c. do hereby agree to sell and convey to the said Silas, Ashley, and Benjamin, &c. all the right, title and interest and claim which the said John and Aaron have, both in law and equity, to the following premises, (here the whole tract mortgaged to Blake as aforesaid is described,) &c."

"And in consideration thereof, the said Silas, Ashley, and Benjamin, do covenant with said John and Aaron to pay them, &c. $494 91."

This instrument was executed by Elliot and Appleton, and by Ashley Hamilton.

In 1825, Silas Ball and Benjamin Bemiss, jun. conveyed all their interest to the demandant, and the tenant, Elliot, has all the right of Elliot and Appleton.

*Woodbury*, for the tenant, contended that the disclaimer by Elliot and Appleton was, under the circumstances, no estoppel, because they then held the land as assignees of the mortgagee, and the mortgagor must be considered as the owner of the estate. 13 Mass. Rep. 229 ; 15 ditto, 280 ; 17 ditto, 299 ; 1 Pick. 89.

It is only as to the mortgagee in contests between him and the mortgagor as to the mortgage that the mortga-

gor is not owner to all purposes.    In the case in which
this disclaimer was filed, the real contest was between
third persons, and as to another piece of land.

The mortgagor is considered as a freeholder.   2 N. H.
Rep. 401, *New-London* v. *Sutton*.

He who holds land in *auter droit* cannot disclaim ; as a
person seized in right of his wife or of the church.  Com.
Dig. " Disclaimer" and " Droit" F.

Here the title of Appleton and Elliot was merely as
security for the debt ; and not a vested interest till a
foreclosure.   A disclaimer cannot affect a title perfected
afterwards by foreclosure.   1 Cowen, 613.

If a tenant disclaims upon record to hold land of his
lord, the lord thereupon may have a writ of right for re-
covery of the land.   But if the lord accept his rent from
the tenant after the disclaimer, it shall be a bar to a writ
of right upon the disclaimer.   Com. Dig. " Droit" F.

Here the demandant agreed to take a deed from the
tenant of the demanded premises after the disclaimer,
which is a stronger act than accepting rent.   This agree-
ment effectually admits the title of the tenant after the
disclaimer, and sets any supposed estoppel entirely at
large.   3 Johns. 363, *Bennet* v. *Irvin*.

*J. Parker*, for the demandant.   The demandant has an
undisputed title to the premises, unless the tenant can
hold under the mortgage to Blake.   In support of the
action it is contended—

1st, That the mortgage to Blake is discharged.   Ap-
pleton and Elliot levied on a part of the land contained
in that mortgage, subject to the whole incumbrance ex-
isting at the time, $423.   They thereby assumed the
debt, became bound to discharge it, and as respects oth-
er persons, holding other parcels under the title of the
mortgagor, a payment by them operated as a discharge.
In their levy they took land to pay the mortgage, and
they stand on the same ground as they would, had they
purchased of Bemiss, jun. a portion of the premises mort-

gaged, and undertaken, as a part of the consideration of the purchase, to pay and discharge the mortgage. No assignment, therefore, could enure to their benefit, as an assigment, except, perhaps, so far as might be necessary for the protection of their title under the levy. " A purchase of the mortgage is in effect a discharge of it in favor of the title under the mortgagor." 7 Johns. Rep. 278, *Collins* v. *Torry.* Where the tenant in possession enters by virtue of a purchase of the equity of redemption from the mortgagor, and then buys the mortgage, and takes an assignment to himself, this extinguishes the mortgage. 1 Cowen's Rep. 463, *Coates* v. *Cheever ;* 2 N. H. Rep. 300, *Eaton* v. *George.*

A. and E. had, by part of the land, received a consideration for discharging the mortgage, and as to them it became no incumbrance. 2 N. H. Rep. 458, *Watts* v. *Wilman.* Of course it could not be assigned to them as an existing charge upon the land. Vide also, 15 Mass. Rep. 278, *Snow* v. *Stevens ;* 13 Mass. Rep. 227, *Bolton* v. *Ballard ;* 15 Johns. Rep. 375, *Smith* v. *Page.*

If A. and E. could take an assignment, to operate as such, and thereby hold the land, they might receive the amount of the mortgage twice, once in the levy, and again under the mortgage. If they could hold the remainder of the land by virtue of the mortgage, they might equally well collect the notes. But this they could not do. It is settled in *Eaton* v. *George* that when the mortgagee assigns all his interest to the grantee of the mortgagor, the grantee cannot sue the mortgagor on the notes secured by the mortgage ; and it can make no difference whether the mortgagor has granted half the equity, or the whole, if his grantee was to remove the incumbrance.

It would doubtless be for the interest of Appleton and Elliot that this should operate as an assignment, but the real intent of the parties—the intent of A. and E. themselves when they levied—was that they should pay and discharge the then existing mortgage—and having paid

it, the mortgage would be discharged, and the remainder of the land freed from the incumbrance. They could not be assignees of that mortgage. 3 Pick. Rep. 54, *Somes* v. *Skinner* ; ditto, 475, *Gibson* v. *Crehore*.

Did, then, the change of the note, and the giving of a new mortgage, by Hamilton and Bemiss, affect it ? Did this discharge any of the duties or liabilities of A. and E., so that they could take an assignment of this mortgage, and hold the remainder of the land under it ?

It will be recollected that the debt for which this new note and mortgage were given, was part of the original debt secured by the former mortgage. The security only was changed, a new note being given, by Hamilton and Bemiss, for what remained unpaid. But this change of the note would not affect the mortgage, or their liability to discharge it. 2 N. H. Rep. 525, *Elliot* v. *Sleeper*. A mortgage will not be discharged but by absolute payment of the money due. 9 Mass. Rep. 242, *Davis* v. *Maynard* ; 7 ditto, 63, *Cary* v. *Prouty* ; 11 ditto, 134, *Perkins* v. *Pitts*.

Assignees of the equity of redemption shall not avail themselves of a payment by a third person as a discharge of the mortgage. 9 Mass. Rep. 179, *Howard* v. *Agry*. And by a parity of reasoning, they shall not say that a change of the security discharged the debt they were bound to pay, and constituted a new mortgage, distinct from the former, so that they can purchase it, and hold all the land under it.

To allow them to collect the new note would be as unjust as to permit them to sustain an action on the other.

It would be equally unjust to permit to hold the remainder of the land. They necessarily obtain $157 by the reduction of the debt, and change of the security.

Neither does the giving of the new mortgage by H. and B. affect the case, because the original debt remained in substance—that debt they were bound to discharge, and the mortgage is merely incident to the debt. 2 Burr. Rep. 978, *Martin* v. *Mowlin* ; 19 Johns. Rep. 325, *Jackson*

v. *Curtis* ; 11 Johns. 538, *Runyan* v. *Messwean* ; 2 Cowen, 195, *Wilson* v. *Troup* ; 1 Johns. Rep. 580—590, *Green* v. *Hart* ; 5 Johns. Ch. Rep. 570 ; 18 Johns. 7, *Jackson* v. *Davis* ; 1 Cowen, 122, *Jackson* v. *Stackhouse* ; 4 Johns. 42 —43, *Jackson* v. *Willard* ; 4 Conn. Rep. 424, *Leonard* v. *Bosworth* ; 2 Pick. Rep. 520, *Peabody* v. *Patten* ; 2 Greenl. Rep. 326—334, *Vose* v. *Handy.*

Chancery will keep an incumbrance alive, or consider it extinguished, as may best serve the purposes of justice, and the just intent of the parties. 6 Johns. Ch. Rep. 393. And this we believe is sound doctrine at law.

2d, The tenant is estopped in this case to set up title to the demanded premises under the mortgage. The assignment from Blake to A. and E. was made January 4, 1815. Subsequent to this, in an action in favor of Hamilton and Bemiss, against them, for the whole premises, they disclaimed any title or claim to the parcel now demanded. This is matter of record, and operates as an estoppel. Com. Dig. Estoppel A. 1 ; Stearns on Real Actions, 225 ; 13 Mass. Rep. 443, *Prescott* v. *Hutchinson* ; 8 Co. Rep. 123, Beecher's case ; 13 Mass. Rep. 402, *Montague* v. *Smith* ; 4 Mass. 625, *Hunt* v. *Whitney.*

The tenant's counsel seem to concede that the record must estop him, but they attemp to avoid its operation by setting up the instrument of October 25, 1815, as an estoppel against the demandant. If this instrument had been perfected, it could not have this effect, for,

1st, It contains no acknowledgment, express, or implied, of any title in A. and E. They were to give merely a quitclaim of all the right they had. They were not to convey the land, and a mere quitclaim of right and title does not furnish matter of estoppel. 3 Johns. Rep. 366, *Bennett* v. *Irvin.* An estoppel will operate upon a title subsequently acquired by the grantor, but if the grantor in a quitclaim deed afterwards acquire the title to the land, he is not estopped from setting up that title. 1 Cowen's Rep. 613—617, *Jackson* v. *Hubble* ; Coke Litt. sec. 446—265 a. ; Johns. 194, *M'Crakin* v. *Wright.*

If a deed would not estop the grantor, *a fortiori*, the grantee could not be estopped by it. A conveyance with warranty operates as an estoppel, for avoiding circuity of action. The warranty is an essential feature. 3 Pick. Rep. 61. But quitclaim is merely equivalent to release. 3 Greenl. 445 ; Com. Dig. Release A. 1. And agreeing to take a quitclaim is far from an admission that the grantor has title. It is not inconsistent with title in the grantee. Com. Dig. Estoppel E. 3. If a man purchase a charter for license to alien his land, he may afterwards traverse the tenure of the king. Ibid. vide also E. 4.

Even if the deed had been executed, there would be no estoppel, not only because quitclaim does not necessarily import any title, but because grantee in a deed poll is not estopped. Com. Dig. Estoppel A. 2 ; Coke Litt. 47, b. ; Shep. Touch. 53 ; Bar. Abr. Leases, o. ; 3 Conn. Rep. 42, *Mewin* v. *Camp* ; 16 Mass. 356, *Somes* v. *Skinner*.

To the greater portion of the land mentioned in the agreement A. and E. had a disputed title, then in controversy, which was to be the object of the quitclaim. It was for this portion that the verdict passed for them, but the premises now demanded they had wholly disclaimed in that very suit. These premises happened to be included in the agreement, not because A. and E. then pretended any title to them, but because they were parcel of the lot.

2d, The record is of a higher nature than the instrument, and the estoppel of the former is not to be controlled by writing or matter *in pais*.

There are three kinds of estoppels—by record, writing, and *in pais*. Coke Litt. 352, a. And as a record is better evidence than a deed, 2 N. H. Rep. 482, evidence of the highest nature, Com. Dig. Record E., importing such incontrolable credit and verity, as to admit no averment, plea, or proof to the contrary, Coke Litt. 260, a., so the evidence of estoppel furnished by a record, must possess a force not controlable by any evidence of estoppel by due. The estoppel by record must be of the highest na-

ture, against which there can be no estoppel but of record. "*Unumquodque dissolvitur eo modo quo colligatur.*" Noy's Maxims 10.

This agreement however was never perfected. It was intended to be the joint undertaking of the demandant, Ball, and Bemiss, Jr., and the latter have not executed it. All the parties contemplated to be bound are not bound. 2 N. H. Rep. 486. It was not to be the deed of Hamilton, unless the other parties executed it, and under a plea of *non est factum* he might avail himself of that defence. 10 Mass. 445, *Culter* v. *Whittemore.* The very nature of the agreement shows that he was not to undertake singly.

RICHARDSON, C. J. This is a very plain case. In 1815, Samuel Hamilton and Benjamin Bemiss, junior, having all the title to the demanded premises under Benjamin Bemiss, senior, the mortgagor, which this demandant now has, as their assignee, brought a writ of entry against Elliot and Appleton who then had all the title under the mortgagee which this tenant now has, and Elliot and Appleton disclaimed. The contest was then what it now is, if any contest could exist in the case, a contest between the assignees of the mortgagor and the assignees of the mortagee. It is most unquestionable that this tenant cannot now set up any title under the mortagee against his disclaimer. Stearns on Real Actions, 222.

But it is said the agreement of this demandant to purchase all the right of Elliot and Appleton, sets the estoppel at large. But the law is not so. The rule is, that where the deed refers to a generality, the party may aver that the matter to which the deed refers does not exist. Thus where the condition of an obligation was to pay all legacies which J. S. had devised by his will, the obligor is not estopped to say that J. S. gave no legacy by his will. 3 N. H. Rep. 209 ; Moor 420. And we are of opinion that the agreement of this demandant to purchase all the right of Elliot and Appleton cannot estoppe him to say that they had no right, and there must be

*Judgment for the demandant.*