# HILLSBOROUGH,

## JULY TERM, A. D. 1844.

## PARKER & a. *vs.* BROWN & a.

A seizin in fact, but without good title, will not support the covenants usual in this State for seizin in fee.

It is no objection to the competency of a witness, that his testimony is in favor of his own title, and therefore, in an action for breach of covenant of seizin in fee, an adverse claimant of the premises is admissible as a witness on the part of the plaintiff.

Such action may be sustained without proof of actual ouster.

The measure of damages in such action is the value of the premises at the time of the delivery of the deed.

If in such action the plaintiff's pleadings set forth, and the verdict finds, that the defendant had no seizin in fee in or title to any of the premises, and judgment is rendered thereon, the plaintiff will be estopped from setting up the deed against his grantor, if he should reclaim the land.

Where M, without fraud and merely by mistake, shows to H, who has already taken a deed of a lot of land, certain points as the boundaries thereof, which were not its true boundaries, and afterwards acquires, by purchase from a third person, a good title to the adjoining lot, part of which is included within such boundaries; and subsequently a person claiming under H gives a deed of the land included within the boundaries thus pointed out, with covenant of title, M is not estopped by his acts from setting up his adverse title to the part thus erroneously included, and consequently, in an action for breach of such covenant, the covenantee may set up as a breach the adverse title of M.

In an action for breach of covenants of title, &c. in a deed, the pleadings set forth, and issue was joined, on a failure of title in the whole of the premises, and a general verdict was returned for the plaintiff, but the breach proved was as to part only of the premises.—*Held*, that the verdict was erroneous, and the court refused to amend it from the judge's notes, so as to make it apply only to the part respecting which a breach was proved.

An entry on a lot of forest land by the owner, to survey it and put up monuments of boundaries, gives him seizin, as against wrong doers, of all the land within such boundaries, though they include more than his lot.

COVENANT BROKEN. This was an action for breach of cov-

enants contained in a deed of certain land in Goffstown and Hooksett, dated August 3, 1836, from the defendants to the plaintiffs. There were two counts, each describing the whole of the premises mentioned in said deed, and setting forth covenants that the defendants " until the delivery of said deed were the lawful owners of said premises, and were seized thereof in their own right in fee simple," and also the usual covenants of right to convey, freedom from incumbrances and of warranty, and alleged an eviction by Joseph Mitchell and Enoch N. Ela, and a breach of each of said other covenants, except that as to ownership, as to the whole of said premises.

To these counts there was a plea, denying such breaches as to any part of the premises. There was a replication in the usual form, and issue joined.

To maintain the issue on the part of the defendants, they put into the case, among other things, a deed of part of lot No. 5, from Jonathan Howard, under whom they claimed title, dated August 16, 1817, and introduced testimony to show that in 1833 said Howard procured said Joseph Mitchell and others to aid in ascertaining the boundaries of the lands purchased by him, and entered upon the land for that purpose, and made a survey of it, corresponding with the description given in the plaintiff's declaration, and placed monuments accordingly. The southeast corner of lot 5 was shown by said Mitchell (he professing to have knowledge of its position,) and the survey was in that particular made in conformity with the information thus communicated by Mitchell.

On the part of the plaintiffs, Enoch N. Ela was offered as a witness, and objected to by the defendants, as being incompetent to testify to sustain his own title, but the objection was overruled. He testified that he was part owner of part of lot 6, adjoining lot 5, on the south, that in January or February, 1839, he entered on that portion of the land in controversy which lies east of the Poor road and south of lot 5, and, claiming the one undivided half of the same, cut and carried away most of the wood therefrom.

It was objected by the defendants at the trial that inasmuch as the southeast corner of lot 5 had been pointed out and shewn as

such by said Mitchell, and the survey of the south line of said lot had been made by Howard in conformity with the corner thus pointed out by Mitchell, it was not competent for the plaintiffs to show that the corner thus pointed out by Mitchell was not the true southeast corner of lot 5, and that the line surveyed, extending westerly from said corner, was not the true south line of lot 5. The court, for the purposes of this trial, overruled the objection.

There was evidence tending to show that part of the lot mentioned in the deed from the defendants to the plaintiffs belonged to one Kittredge, and part of it to Mitchell and Ela; that the latter had ousted the plaintiffs of the part belonging to them, and that the boundaries which Mitchell had pointed out as the true boundaries of lot No. 5, and which were the same mentioned in the defendants' deed to the plaintiffs, included part of lot No. 6. There were other deeds and testimony, which it is not necessary to recite.

The jury found that the defendants did break their covenants, as alleged by the plaintiffs; that the defendants, at the time of making and executing the deed, were not seized of the premises in said writ described, were not the lawful owners thereof, and had not full power and lawful authority to grant and convey the same; that said premises were free and clear of incumbrances, as in the defendants' plea is alleged, and that said Joseph Mitchell and Enoch N. Ela had lawful right and title to said premises, as in said declaration is alleged. The damages awarded were for part of the premises only.

The defendants moved to set aside the verdict and for a new trial.

*C. H. Atherton,* for the defendants. Where there is an actual seizin, there is no breach of covenant for seizin. It is against the policy of the law to allow a grantee to recover the value of the land from his grantor, where there is seizin and no eviction.

*Farley,* on the same side. Ela was not a competent witness. In a subsequent suit by plaintiffs against him, a judgment for the plaintiffs in this case would be a bar.

Parker *v.* Brown.

*S. D. Bell,* for the plaintiffs. I. Are the plaintiffs disabled to show a title in Joseph Mitchell to a part of the land included in their deed, by the fact that Mitchell, before he purchased this land, had shown the defendants a wrong corner, from ignorance or other cause ? This question may be divided.

1. Was Mitchell disabled to purchase land as part of lot No. 6, which he had previously incorrectly pointed out to the owners of lot No. 5 as part of their lot, either from ignorance or design ?

2. Are the plaintiffs bound by any act of Mitchell ?

3. Could the plaintiffs have barred Mitchell by showing his acts ?

At the time Mitchell was called to show the bounds of lot No. 5, he had no interest in either lot, and did not purchase in lot No. 6 till three years after. The plaintiffs claim nothing under him, and are bound by no act of his. There is no pretence of any fraud on the part of Mitchell in showing the bounds of the Ela lot, nor any misrepresentation of any fact which he knew to be otherwise. There are cases where a man is bound by his representations, where others are led by them to purchase property. In this case, if Mitchell had been the owner of both lots, and on a sale of No. 5 to Howard, had shown a wrong corner, it would have been a fraud in him to claim above that corner ; but in this case Mitchell was called upon merely because he resided in the vicinity of the property, to aid them with the knowledge he had of the place, in making a survey of the property for the information of the owner. The purchase had already been made, and the survey was not made in contemplation of any sale. It is not pretended that Mitchell did not give the best information in his. power in entire good faith.

II. Was Enoch N. Ela rightfully admitted as a witness to prove title in himself and Mitchell ?

The true test of the interest of a witness is that he will either gain or lose by the direct legal operation and effect of the judgment, or that the record will be legal evidence for or against him in some other action. *Greenl. Ev.* 431–434. In this case, it is apparent that Ela cannot gain or lose by the result of this action. Neither will the record be evidence either for or against him. He is neither a party nor a privy to it. His interest does not

depend on anything which can be done by either of these parties, nor can it be affected by their acts.

III. Is the ruling of the court correct, that there may be a breach of the covenant of ownership while the covenant of seizin may be unbroken ?

The form of these covenants is, " that until the delivery hereof they are the lawful owners of said premises, and are seized and possessed thereof in their own right in fee simple."

It is contended that these covenants are not identical, and that the same facts do not constitute a breach of them.

It is admitted that in the case of *Willard* vs. *Twitchell,* 1 *N.H. Rep.* 177, the law is laid down by the court adversely to this view of the case. So in *Marston* vs. *Hobbs,* 2 *Mass.* 439 ; *Bearce* vs. *Jackson,* 4 *Mass.* 408 ; *Sumner* vs. *Williams,* 8 *Mass.* 215 ; but in *Platt on Covenants* 309, and 4 *Cruise Digest* 404, 411, the law as laid down in those cases is denied on the authority of *Nervin* vs. *Munns,* 3 *Lev.* 46 ; *Howell* vs. *Richards,* 11 *East* 642 ; *Browning* vs. *Wright,* 2 *B. & P.* 27, *Buller,* J. ; *Trenchard* vs. *Hoskins, Litt. R.* 63, 65, 205 ; *Winch* 91 ; *Sid.* 328 ; *Nash* vs. *Ashton, Skin.* 42 ; *T. Jones* 195 ; *Chamberlin* vs. *Ewer,* 2 *Buls.* 12 ; *Goodman* vs. *Knight,* 1 *Rolle* 84 ; *S. C., Cro. Jac.* 358.

The case in 1 *N. H. Rep.* is not an authority, because the remarks of the court are mere *obiter dicta,* not called for by the case. No question did or could arise in the case in relation to the equivalent or relative effect of the covenants, and the whole opinion is a mere transcript of C. J. *Parsons's* opinion in *Marston* vs. *Hobbs,* 2 *Mass.* 438. The case of *Marston* vs. *Hobbs* is open to the same objection. The C. J. introduces his opinion, by the suggestion that as actions to recover damages for the breach of covenants contained in deeds of conveyance of land, are very frequent in this part of the country, and as the principles on which such actions are to be maintained seem not to be generally understood, it may be expedient to consider the subject more at large, &c. ; and he then proceeds to discuss various matters relating to this class of actions. Among them is his observation about synonymous covenants. If it had been a point decided, it is no au-

thority here ; being a mere *obiter dictum* upon a point not raised at the bar, nor discussed, nor material to a decision of the case. It is not authority even in Massachusetts. Even if it were entitled to be considered an authority, it could have little weight, for it is very guardedly expressed. " They are *called synonymous*, because the same fact, the seizin of the defendant, which will support the first will also support the other." It is not said *they are* synonymous or equivalent, but merely that they are called so. The observation, such as it is, is nevertheless entirely unfounded in the application made of it to these covenants in New-England. This manner of speaking of these covenants had a color of foundation in England, because there the usual form of the covenant of seizin is, " that the grantor is seized of a good and indefeasible estate in fee simple in the premises." This is the form in *Browning* vs. *Wright*, 2 *B. & P.* 13, where these covenants are called synonymous. See *Powell on Mort.* 1158, 1160 ; *Platt on Covenants* 306 ; 14 *Johns.* 248, *Abbott* vs. *Allen;* 14 *Pick.* 128, *Smith* vs. *Strong.* If this covenant is not broken, it is evident that the covenant of good right to convey is not broken, since a person seized of an indefeasible estate in fee has a perfect right to convey. But the covenants in New-Hampshire are not usually in this form ; they are merely that the grantor is seized, or lawfully seized of the premises, in his own right in fee simple. The case of *Abbott* vs. *Allen*, 14 *Johns.* 248, is founded upon a covenant of seizin of an indefeasible estate in fee simple. In that case the covenant of power to convey is of course a mere corollary to the other. However just the idea that these covenants are synonymous in England, as they are there drawn, it is clear that they are neither synonymous nor equivalent, as they are usually drawn here.

By the construction given to them by C. J. *Parsons* and C. J. *Richardson*, a seizin by right or by wrong is all that the covenant of seizin requires. This covenant may be often broken, where the covenant of good right to convey is not. Thus all persons conveying under powers, may have good right to convey when they have no seizin. Such are the cases of administrators; *Caswell* vs. *Wendell*, 4 *Mass.* 108 ; *Bickford* vs. *Page*, 2 *Mass.* 455 ; and

of guardians, collectors of taxes and sheriffs. Covenant of good right to convey, is a covenant that the party has not only an interest to be conveyed, but that he has a capacity to make the conveyance. Thus husband and wife make a deed of the wife's land; while the wife is under age, the covenant of seizin may not be broken, while that of right to convey clearly is so.

For the position of C. J. *Richardson,* that the covenant " that the grantor is the lawful owner," is equivalent to the covenants of seizin and right to convey, I have found no authority or even dictum. I believe there is none. It is, so far as I have discovered, a form of covenant not in use in England, and I have discovered no decision relating to it. Taking the natural import of the language, a covenant of this kind is an assurance that the entire and absolute property in the land conveyed belong to the grantor. It is equivalent to the English form, that he is seized of a good, sure and indefeasible estate of inheritance in fee simple in his own right. There could not be the slightest pretence to say that this covenant would be performed if the party was seized by wrong, or if he had any interest short of the absolute, unqualified title.

IV. Is the verdict sufficient, the damages awarded for different breaches not being distinguished ? The authorities below are to the point that the verdict is good. 2 *Tidd's Prac.* 801; 1 *Arch. Prac.* 195; 1 *Doug.* 377, *Eddowes* vs. *Hopkins;* 2 *Ditto* 730, *Grant* vs. *Astle;* 2 *Will. Saund.* 171, *b.*

V. Can damages be given on the covenant of ownership without any adverse claim ?

The case of *Smith* vs. *Strong,* 14 *Pick.* 128, is deemed a case in point. It was a covenant that the defendant was seized of a perfect, absolute and indefeasible estate of inheritance in fee simple. It was held that, the party having no such estate, the covenant was broken on the delivery of the deed. The court advert to the distinction between the New-England covenant of seizin, and that used in New-York. According to our view, this New-York covenant is very nearly equivalent to the covenant that he is the lawful owner. He was not the lawful owner unless he was seized of a perfect, absolute, and indefeasible estate of

inheritance in fee simple ; and if not, his covenant was broken instantly upon the execution of the deed.

VI. Is an entry to make a survey of a lot, and including in such survey, and designating by monuments part of an adjoining lot by mistake, sufficient to vest a seizin of the part so included?

VII. Is the rule of damages laid down by the court correct, to wit: the value of that part of the land to which the defendants had no title at the time of the conveyance. The rule, as I find it laid down is, that on the covenants of seizin, and good right to convey, the damages are the consideration paid, and the interest. *2 N. H. Rep.* 178, *Ela* vs. *Card ;* 4 *N. H. Rep.* 233, *Morse* vs. *Shattuck ;* 14 *Pick.* 134, *Smith* vs. *Strong ;* 14 *Johns.* 95, *Kane* vs. *Sanger.* If the failure of title is partial, the damages are such part of the consideration as the value of the part evicted is of the value of the whole property. 5 *Johns.* 49, *Morris* vs. *Phelps ;* 12 *Ditto* 126, *Guthrie* vs. *Pugsley ;* 10 *Wend.* 142, *Dimmick* vs. *Lockwood ;* 2 *N. H. Rep.* 178, *Ela* vs. *Card ;* 4 *Mass.* 108, *Caswell* vs. *Wendell.* Either party may show that the consideration actually paid was either less or more than that stated in the deed. 4 *N. H. Rep.* 233, *Morse* vs. *Shattuck ;* 11 *Pick.* 280, *Wade* vs. *Merwine ;* 17 *Mass.* 257, *Wilkinson* vs. *Scott ;* 4 *N. H. Rep.* 400, *Pritchard* vs. *Brown ;* 5 *Ditto* 266, *Barnes* vs. *Learned.* In case of partial defect, either party may show at what sum that part was valued in making the purchase, and the defendant may even show that nothing was in fact paid for it. 5 *N. H. Rep.* 266, *Barnes* vs. *Learned ;* 10 *Mass.* 459, *Leland* vs. *Stone.* If the actual consideration cannot be ascertained, the rule may be, the value of the land at the time of the sale. 14 *Pick.* 134, *Smith* vs. *Strong.* The rule adopted by the court is believed to be precisely that which is stated in the preceding cases. The results of the decisions on this subject are stated by Ch. *Kent,* 4 *Com.* 474, &c. under the real covenants of warranty ; " the value was computed as it was when the warranty was made ;" for which position are cited *Bracton, L.* 5, *ch.* 13, § 3 ; *Brooke Abr., Voucher, pl.* 69 ; *Recouver en value, pl.* 59 ; *Yr. Bk.,* 30 *Edw. III.* 14 *b ;* 19 *H. VI.* 46 *a,* 61 *a ; Godb.* 151, *Ballet* vs. *Ballet.* In other States,

Parker *v.* Brown.

(except Massachusetts) the measure of damages on a total failure of title, even on the covenant of warranty, is the value of the land at the time of the execution of the deed, (and the evidence of that value is the consideration money,) with interest and costs. Very numerous authorities are cited to this point. The case in question falls precisely within the rule laid down by Ch. *Kent.* The jury were instructed that the value of the land at the execution of the deed was the measure of damages, and the only evidence of value laid before the jury was the consideration stated in the deed. 4 *Johns.* 1, *Pitcher* vs. *Livingston.*

PARKER, C. J. Mitchell and Ela are not estopped from setting up title to the whole of lot No. 6, by the fact that Mitchell, at a time when he had no interest, showed a certain bound as the corner of lot No. 5, which would include a portion of lot No. 6 within the limits of lot No. 5.

Mitchell alone would not be thus estopped. His acts could not affect the owner of lot No. 6, who might notwithstanding convey a good title to the whole of that lot to any third person, and his grantees might convey as good a title to Mitchell as to any one else. In the case of fraudulent sales, a party who has notice may purchase and take a good title from one who purchased from the fraudulent grantee without notice. There was no warranty of title in Mitchell's pointing out the bounds for the purpose of a survey, nor any representation respecting the title. It was a mere mistake respecting the lines of a particular lot, with no reason why especial dependance should be placed upon his information. Another reason why he cannot be estopped is, that Howard did not act upon that information in making his purchase. The survey was made subsequent to the purchase. It is perhaps not clear that Mitchell could have been estopped from setting up title by an act of that description, if he had been the owner of No. 6 at the time, and Howard had purchased after the boundary was pointed out by him, if it appeared clearly that he acted under a mistake respecting the true line.

A party is estopped to set up title where he has permitted his land to be sold and conveyed under such circumstances that the

concealment of his title would be a fraud upon the grantee, if he was permitted to set it up afterwards. 11 *N. H. Rep.* 201, *Thompson* vs. *Sanborn;* [12 *N. H. R.* 133, *Marshall* vs. *Pierce.*] In case of mutual mistake respecting a boundary, perhaps he ought not to suffer, notwithstanding the other party may be prejudiced by relying on his act. *Brewer* vs. *Boston & Worcester R. R. Co.,* 5 *Met.* 478 ; *Tolman* vs. *Sparhawk,* 5 *Met.* 469.

Ela was a competent witness. It is not an objection to a witness that his evidence goes to sustain his own title to land, if he has no interest in the suit. Ela would not gain or lose by the event, nor could the verdict and judgment be evidence for or against him.

If the plaintiffs should fail in this suit, upon the ground that the defendants had title to the land they conveyed, that would not bind Mitchell and Ela, who are not parties to this proceeding.

If the plaintiffs succeed, that will not avail Mitchell and Ela against Howard in another action. Estoppels must be mutual.

It appears, from the evidence in the case, that the defendants were not the owners of all the land included in their deed to the plaintiffs. By reason of the error respecting the southeast corner of lot 5, when the survey was made the line mentioned in the deed was extended too far to the south and also to the east.

But the survey of Howard, entering under his deed, gave him a seizin as against any one who could not show a better right, to the extent of the survey and the boundaries then set up. He had actual seizin to that extent. *Wendell* vs. *Blanchard,* 2 *N. H. Rep.* 456 ; *Woods* vs. *Banks,* [14 *N. H. Rep.* 112.] This seizin was transmitted to the plaintiffs, so that they might have maintained trespass against a mere wrong doer.

The evidence shows an entry of Mitchell and Ela under this title upon that part of the land included in the deed to the plaintiffs, south of the true line of lot No. 5, and east of the Poor road, being part only of the land included in the deed from the defendants to the plaintiffs, to which Howard, and the defendants claiming under him, had not title. Mitchell and Ela had no title on the east end of No. 6, nor any west of the Poor road. No other title appears to have been asserted. Kittredge may have

entered on the gore west of the Poor road, or he may not. How that is, does not distinctly appear. The covenant of warranty, therefore, has been broken only in relation to that part on the south side of lot 5 east of the Poor road. This would authorize an action only in relation to that tract upon that covenant. 11 *N. H. Rep.* 77, 78, 85, *Loomis* vs. *Bedel.*

The plaintiffs claim to recover damages for the whole land included in the deed, to which the defendants had not title, and the verdict covers all that land. The plaintiffs, then, to show a right of action to the extent of their claim, must maintain it on the covenant of seizin, or on that of good right to convey. No breach of the covenant that the defendants were lawful owners is alleged. If the doctrine in *Willard* vs. *Twitchell*, 1 *N. H. Rep.* 175, is correct, the plaintiffs cannot maintain an action on those covenants upon the facts before us. It is there stated, in substance, that the covenants of ownership, seizin, and good right to convey, are satisfied if the party had seizin whether by right or wrong.

This doctrine is derived from *Marston* vs. *Hobbs*, 2 *Mass.* 439, where the law is laid down in familiar terms.

In neither of these cases was it necessary, to the determination of the case before the court, to settle the construction of the covenant of seizin usually contained in deeds here.

The doctrine there laid down of *Marston* vs. *Hobbs* has been confirmed, however, in several subsequent cases in Massachusetts, and has been adopted in Ohio, (3 *Ohio* 220, 307,) and seems to have been sanctioned by an incidental opinion in Maine, 1 *Fairf.* 95. But it does not seem to have been brought before the court here for consideration in any case where the point was directly in issue. The doctrine of *Marston* vs. *Hobbs* upon this subject has been controverted elsewhere. 4 *Kent's Com.* 471, *note ;* 3 *Verm.* 403, *Catlin* vs. *Hurlburt ;* 5 *Verm.* 20, *Richardson* vs. *Dorr ;* 5 *Conn. R.* 262, *Gilbert* vs. *Bulkley.*

It is under these circumstances that the true construction of this covenant is brought before us for consideration by the very able argument of the plaintiffs' counsel. We have given the question all the consideration that the intrinsic importance of the principle, and the inexpediency of holding a different doctrine

from that which has been once promulgated, even incidentally, except in a clear case, demands of us. But that consideration has satisfied us that the fair import of the covenant of seizin extends beyond a mere engagement that the party is seized of the land by a seizin which would be good only against another having no pretence of title.

After contracting that they are the lawful owners of the premises, the grantors covenant that they are lawfully seized in their own right in fee simple. This engagement is certainly not satisfied in any just sense, by evidence that the grantors are unlawfully seized without right in their own wrong, and of no fee simple except such as is claimed wrongfully, and in disseizin of the true owner. This may be a good seizin against all but the true owner, but is not a seizin in the party's own right in fee. The grantee who takes such a covenant for his security has a right to understand that his grantor covenants to him some seizin other than one which will make him liable to the rightful action of a third person the moment he enters under his deed. And we think we are required to give to the terms of the covenant the fair signification to be drawn from the language in which it is expressed. Parties not conversant with the law ordinarily understand this covenant as an assurance of a title, and we are of opinion that they have the right so to understand it. A party who has disseized another may be treated as seized of the fee, at the election of the disseizee. He cannot be permitted to qualify his own wrong. But this is for the sake of the remedy. A party who remains in the adverse peaceable possession of lands for twenty years as owner, may thereby have evidence of a seizin in fee during that time. But this is for a quieting of possession and barring stale claims. It does not show that before the lapse of the period prescribed he had a lawful seizin in fee. On the contrary, he was, until the expiration of the period, a wrong doer.

That the deed may transmit a seizin in virtue of which, and a possession under it, the grantee may obtain evidence of an indefeasible fee simple, does not show then that the terms of the covenant are fulfilled.

Nor does the consideration that the seizin transmitted may never

be interrupted, suffice to give a construction to the covenant, or to show that the grantee ought not to maintain an action until he is actually dispossessed.

The engagement of the grantor upon the covenant is not that he will be answerable if the grantee is ousted. That is the effect of the covenant of warranty.

No wrong is done by the maintenance of the action ; for if the grantee recovers damages for the breach of the covenants of seizin, on the ground that the grantee had no title whatever, the operation of it must be to estop the grantee from setting up the deed afterwards, as a conveyance of the land, against the grantor. We see not why the grantor may not again enter, if he chooses, as against the grantee. A recovery in trespass or trover with satisfaction, vests the property in the party against whom the damages are assessed

The defendants may reënter if they think proper, and will hold under their former possession against all persons who cannot show a better right. We are not aware of anything in the nature of the feudal investiture, or in the principles which regulate the title to land at the present time, that should require a different rule in relation to real estate. The record of the recovery will furnish as good an estoppel as that which arises from a disclaimer. 4 *N. H. Rep.* 182, *Hamilton* vs. *Elliot.* The defendants may reenter if they think proper, and will hold under their former possession, against all persons who cannot show a better right.

The measure of the damages for a breach of the covenant of seizin is the value of the land at the time of the conveyance, which may be determined by the consideration paid. This was stated to be the rule in this case, and it is not controverted that the consideration expressed in the deed was the evidence of value.

But the plaintiffs were not entitled to the verdict they have obtained, nor will it be safe for them to hold it. The declaration describes the whole land conveyed, and alleges an entire breach of the covenants of seizin and warranty. The issues contradict this. The one on the covenant of warranty admits the ouster, and traverses the title of Mitchell and Ela. The verdict finds that the defendants were not seized in manner and form, and that

Mitchell and Ela had lawful right and title to the premises de-scribed in the declaration.   Although Mitchell and Ela cannot claim anything by virtue of this verdict, the defendants seem to have a right to rely upon it as record evidence between these parties, not only that the defendants were not seized of any part, but that the plaintiffs have been entirely ousted and have recov-ered compensation for it.   See 9 *Mass*. 143, *Stinson* vs. *Sumner*. The declaration might have set out the breach in part specially under a *scilicet*, and the issue have been framed on that; or, the issue being general, as in this case, the verdict should have been special; the evidence showing a breach in relation to only part of the land.

After this opinion was delivered, the plaintiffs' counsel moved that the verdict be amended, so that it should find that the de-fendants were not seized of six and one half acres, parcel of the premises; and as to the residue of the premises, that they were seized and had lawful right to convey the same.

The plaintiffs' counsel contended that the court had general power to amend verdicts in conformity to the notes of the judge who tried the cause; that damages were awarded by the jury only for the land of which the plaintiffs were shown to be evicted; that it is not necessary to insert in the verdict the quantity of land for which the damages were awarded; that it would be suffi-cient to say " of part of the premises" the defendants were not seized, and of the residue they were.

PARKER, C. J.   It seems from the case that the jury gave damages only " for the value of that part of the premises con-veyed to which the defendants had not title at the time of their conveyance"; and if it would be sufficient so to amend the ver-dict as to find that the defendants had not title to a part of the premises, we might make that amendment on the case before us. But upon the construction we have given to the covenant of sei-zin and the operation of a recovery for the breach of it where the grantor had actual seizin without title, it seems clear that if the failure of title is but of part of the land embraced in the deed,

Parker *v.* Brown.

either the declaration or the verdict should specify the tract for which the damages are recovered, with as much certainty as would be required in a deed of the land.  And we are of opinion that there is not sufficient before us to authorize us to make this verdict thus specific.  As the rights of the parties are settled, there will probably be no occasion, however, for another trial.

*Verdict set aside.*