# FISK *v.* HICKS.

In case, for deceit in an exchange of horses, the value of the horse given by the plaintiff in exchange, may be shown, as tending to fix the value of the horse taken in exchange, if the false warranty or representation had been true.

The rule of damages, in actions for deceit in the sale of a horse, by means of a false warranty, where the unsound horse remains in the hands of the buyer, is the difference between the value of the horse as he was, and as he was represented to be.

The consideration paid is evidence of the value, if the warranty had been true.

In case, for deceit by a warranty that a horse was well and sound, a breach was alleged that he was not well and sound, but that he was infected with glanders, and otherwise unsound and diseased. *Held*, that the allegation as to the glanders might be struck out as surplusage, there being a sufficient breach without it, and it need not, therefore, be proved.

Fisk *v.* Hicks.

In case, the declaration was as follows: In a plea of the case for the said defendant, on, &c., at, &c., being possessed of a certain grey horse, which was unsound and diseased, and infected with a certain disease called the glanders, which rendered the same horse good for nothing; and the plaintiff, being then and there also possessed of another certain bay mare, of his own proper mare, of the value of fifty dollars, he, the said defendant, to induce the plaintiff to exchange horses with him, did then and there falsely and fraudulently affirm to the plaintiff that his said horse wäs then well and sound, except his fore feet were a little tender. Whereupon the plaintiff, giving full credit to the defendant's said affirmation, was instantly induced to, and did then and there deliver his said mare to the defendant, in exchange for the said defendant's horse aforesaid, and did also then and there pay the defendant the sum of fifteen dollars, as boot between said horses. And the defendant did then and there deliver his said horse to the plaintiff, in exchange for the plaintiff's said mare, and said sum paid as boot by the plaintiff as aforesaid. Now the plaintiff, in fact, says that the defendant's horse aforesaid was not, at the time of the delivery, exchange and affirmation aforesaid, well and sound, except a little tender in his forefeet, but was then and there infected with and labored under a bad and inveterate disease, called the glanders, and was otherwise sick and unsound, which made him utterly unfit for any service, and good for nothing, of which the defendant was then and there well knowing. And the defendant, by means of his said false affirmation, hath greatly injured and defrauded the plaintiff, to the damage of the said plaintiff, as he says, the sum of seventy dollars.

Upon the trial, the trade for the exchange of the plaintiff's mare for the defendant's grey horse was proved as alleged, and there was evidence *tending to* show that the horse was sick and had the glanders at the time of said trade, and that the defendant knew it. Also that the defendant, before he

procured said grey horse, said that he was sick and would shortly die, but that he could fix him up and trade him off for seventy or seventy-five dollars; and he named the plaintiff as the person to whom he could probably dispose of him. At the time of the trade, no particular sum was named as the value of the grey horse or of the mare. The plaintiff was allowed to give evidence of the character, description and power of his mare, to which the defendant excepted.

The court charged the jury that they should decide upon the evidence, if they could, what would have been the value of the grey horse, if he had been sound, and what value the defendant, by his false and fraudulent declarations, if the jury believed he had made such, induced the plaintiff to set upon the grey horse, and what he was, in fact, worth, being unsound at the time that the plaintiff obtained him from the defendant, and the plaintiff would be entitled to that difference as damages, and the fifteen dollars which he had paid as boot, and such other damages in addition, as were the natural and ordinary results of the defendant's fraud, and that to determine what value the plaintiff set upon the grey horse, by the fraudulent inducement of the defendant, they might, among other things, consider what was the value of the plaintiff's mare; that it was for this purpose that the court permitted the plaintiff to put in evidence a description of his mare, and that they would give such damages as were commensurate with the injury which the plaintiff had sustained.

The court further instructed the jury that, there being evidence tending to show that the grey horse was thin in flesh, and run at the nose, and had been much exposed to cold, and had symptoms which sometimes lead to lung fever and consumption, and there being evidence tending to show that defendant said the horse was sick and would die, if they found the horse was so sick and diseased, at the time of the trade, although he had not the disease technically called glanders; and if they found that the defendant asserted to

the plaintiff, as it was alleged, that the horse was sound, they might find that the defendant was guilty, and might render a verdict for such sum, in damages, as they should find the plaintiff had sustained.

The jury gave a verdict for the plaintiff, which the defendant moved to set aside, for the above errors in the admission of evidence and in the charge to the jury.

*Whidden & Williams,* for the defendant.

*Benton* and *Hayward,* for the plaintiff.

BELL, J. The rule of damages, in actions founded on a breach of warranty upon the sale of personal property, and in actions for deceit in the sale of personal property, where the property remains in the hands of the purchaser, as settled by this court, is understood to be the difference between the value of the property as it would be if the warranty or representation were true, and its value as it really was at the time. 2 Greenl. Ev. § 262; *Caswell* v. *Coare,* 1 Taun. 566; *Fielder* v. *Starkin,* 1 H. B. 17; *Curtis* v. *Hannay,* 3 Esp. 83; *Buchanan* v. *Parnshaw,* 2 D. & E. 745; *Egleston* v. *Macauley,* 1 McCord 379; *Armstrong* v. *Piercy,* 5 Wend. 539, there cited; and see *Cary* v. *Gruman,* 4 Hill 65; *Willis* v. *Dudley,* 10 Ala. Rep. 933; *Cothers* v. *Keever,* 4 Barr 168; *Kornigdy* v. *White,* 10 Ala. Rep. 255; *Clare* v. *Maynard,* 7 C. & P. 741; 2 Phil. Ev. 105; *Bridge* v. *Wain,* 1 Stark. Rep. 504; *Cox* v. *Walker,* 6 Ad. & El. 523.

This is also the rule adopted by the court in actions for a breach of the covenant of seizin of real estate. *Parker* v. *Brown,* 15 N. H. Rep. 176.

There is a large class of cases elsewhere, where the rule of damages is held to be the difference between the real value of the property warranted and the price paid, with interest. It is not necessary to refer to them more particularly.

In *Parker* v. *Brown,* it was held that the consideration

paid was evidence of the value of the land at the time of the sale; and in many cases it has been held that the consideration paid is evidence of the value of personal property warranted, if the warranty was true. *Kary* v. *Gruman,* 4 Hill 625; *Clare* v. *Maynard,* 7 C. & P. 741; *Cox* v. *Walker,* 6 Ad. & El. 523. The same rule was applied, as we think, in the case of *Hodge* v. *Kimball,* in Coos.

In the present case, there was no pecuniary value affixed to the animals exchanged. The price agreed on for the warranted horse was the mare and fifteen dollars. If the jury should be able to ascertain the value of the mare in money, that value and fifteen dollars was the consideration paid for the horse, and the consideration paid is proof of the actual value of the horse, if he had been as he was represented.

To enable the jury to judge of this value, it was proper they should consider any evidence which might be presented to them, proper to fix the value of the mare, just as they would have received evidence of the value of uncommon foreign coin, as ducats, for example, if all but the fifteen dollars had been paid in such coin.

It is not suggested that the evidence received of the value of the mare was improper, if it was fit that any evidence, on that subject, should be admitted. There was, then, we think, no valid objection to this evidence.

Objection is taken to the charge given to the jury. As we understand this charge, the idea intended to be given to the jury was, that they were to ascertain the value of the grey horse, as it would be if he was sound as he was represented to be, and as the defendant was induced to believe him to be by the false statements of the defendant, and what the same animal was, in fact, worth, being unsound at the time of the exchange, and the plaintiff would be entitled to the difference between those sums as damages and such other damages, if any, as were the natural and ordinary results of the defendant's fraud. That to determine what was

the value of the grey horse, they might, among other things, consider what was the value of the plaintiff's mare, and the fifteen dollars paid as boot, the plaintiff having been permitted to put in evidence a description of his mare, to enable the jury to judge of her value. So understood, the charge seems to us correct and unobjectionable. So it is alleged to have been by the counsel for the plaintiff, and so obvious does it seem to us that the expression " and the $15 which was paid as boot," was inserted where it is instead of its natural place, after the words " value of the plaintiff's mare," by a mere error in transcribing, that the leave asked to obtain an amendment will be granted to make the fact certain. If the case is now correct, the charge was erroneous.

The court charged the jury that if they found the horse so sick and diseased, at the time of the sale, that he would die, as the defendant said, and he warranted him sound, they would find the defendant guilty, though they should not find that the horse had the disease technically called glanders. It is contended that this instruction was not correct, and that the declaration is not sustained, unless the breach is proved, as it is alleged, that is, that the horse had the glanders, and that it is not enough to prove that the animal was otherwise sick and unsound, as stated in the declaration.

It is generally true, in declarations for torts, that surplusage does not vitiate. A party proves such of the allegations of his writ as he can, and his failure to prove other statements does not prevent his recovery, if he proves any good ground of action. The rule is stated in 1 Chit. Pl. 307, thus : " With respect to what statements are necessary to be proved, the rule seems to be that if the whole of the statement may be struck out, without destroying the plaintiff's right of action, it is not necessary to prove it, but otherwise, if the whole cannot be struck out, without getting rid of a part essential to the cause of action, for then, though

the averment be more particular than it need have been, the whole must be proved, or the plaintiff cannot recover. *Williamson* v. *Allison*, 2 East 452; *Mersey Co.* v. *Douglas*, 2 East 502; *Kellner* v. *Lamesurier*, 4 East 400; *Savage* v. *Smith*, 2 Black. 1104; *United States* v. *Porter*, 3 Day 283; *Jerome* v. *Whitney*, 7 Johns. 321; Prec. of Dec. 83.

Was there here a sufficient breach, without the clause describing the nature of the disease? " In general," says Chitty, (Pl. 326,) " if a breach is assigned in words containing the sense and substance of the contract, it is sufficient." Com. Dig. Pl. C. 46. In 2 Chit. Pl. 101, are given forms of declarations on warranties of the soundness of horses, where the breach is thus alleged:

" Nevertheless the said (defendant,) contriving, &c., did not perform or regard his said promise or undertaking, &c., but thereby craftily and subtilly deceived and defrauded the (plaintiff) in this, to wit: that the said horse, at the time, &c., was not sound, but, on the contrary thereof, was unsound," &c. And in a note, it is added that " the particular description of unsoundness needs not to be stated, it being a general rule, in pleading, that the breach may, in general, be assigned in the negative of the words of the contract." Com. Dig. Pl. C. 45; 2 Saund. 181, b. n. 10; *Harris* v. *Mantle*, 3 D. & E. 307.

Here the breach that the defendant's horse was not well and sound, except a little tender in his forefeet, but was otherwise sick and unsound, was a sufficient breach, and the whole allegations relative to the glanders may be struck out, and a good cause of action remains well alleged.

This clause, then, seems to us to have been justly regarded by the court as immaterial, and the instruction to the jury relative to it was correct. If the amendment asked is made, the plaintiff will have judgment, otherwise a

*New trial ordered.*