## BUSH and another *against* CANFIELD.

THIS was an action on the case, brought by the plaintiffs as the only surviving partners of the late firm of *Nor-& Bush.* The declaration stated, that *Norton & Bush,* on the 20th of *February* 1812, entered into a contract in writing with the defendant, in these words : " It is agreed by and between the parties here subscribing, that *Judson Canfield* agrees to deliver to the order of *Norton & Bush,* at *New-Orleans,* 2000 barrels *superfine* wheat flour, to be delivered in good shipping order, on or before the first day of *May* next : the flour to be regularly inspected at *New-Orleans,* at the time of delivery ; the price of the superfine to be 7 dollars *per* barrel ; and in case the whole quantity to be delivered should not pass as *superfine,* but should pass as good merchantable *fine* flour, the said *Canfield* will have a right to deliver of the above named 2000, say 1000, barrels, that should be inspected and branded *fine,* at 50 cents less than the price of *superfine,* as above. And *Norton & Bush* do agree to receive the flour as here described, at the port of *New-Orleans,* and to pay therefor 5000 dollars in advance, as is agreed by us, calculating to be in 15 or 20 days from this date ; 3000 dollars more to be advanced at four months from the date of the first advance for the said flour ; and the balance then remaining due to be paid in six months from the date of the delivery of the said flour. It is agreed, that *Norton & Bush* shall be allowed four months interest on 1000 dollars. [Signed.] *Judson Canfield.* *Norton & Bush.*"

That in pursuance of this contract, *Norton & Bush* paid over to the defendant, on the 12th of *March* 1812, the sum of 5000 dollars ; and were ready, at *New-Orleans,* on the 1st of

*A.* and *B.* entered into a written contract, whereby *B.* agreed to deliver to *A.* at *New-Orleans,* 2000 barrels of flour, on a certain future day, at the price of 7 dollars *per* barrel ; and *A.* agreed to receive the flour, and pay 5000 dollars in advance, and the residue by certain instalments, subsequent to the time of delivery. *A.* accordingly advanced 5000 dollars, but *B.* wholly failed to deliver the flour. At the stipulated time of delivery, the price of flour at *New-Orleans* was only 5 dollars, 50 cents. In an action brought by *A.* against

*B.* stating the contract, and assigning a breach, it was held, that the rule of damages was the money advanced, with interest.

*May* 1812, to receive the flour ; and have kept and perform-
ed all the covenants on their part ; concluding with a gene-
ral assignment of breach, on the part of the defendant, and a
demand of damages.

The defendant pleaded *Not guilty,* and several special
pleas, on which issues were taken.

The cause was tried at *Litchfield, February* term, 1818,
before *Edmond* and *Smith,* Js.

On the trial, it was proved, that the price of superfine
flour at *New-Orleans,* on the 1st of *May,* 1812, was 5 dollars,
50 cents, per barrel, and no more. The court, in their charge
to the jury, directed them, that if they should find the issues
in favour of the plaintiffs, the rule of damages would be, the
amount of the sum advanced by the plaintiffs to the defend-
ant, and the interest thereof, from the time it was so advan-
ced. The jury found a verdict for the plaintiffs, with 6,771
dollars damages ; and the defendant moved for a new trial,
on the ground of a mis-direction.

*N. Smith* and *A. Sterling,* in support of the motion, con-
tended, that the rule of damages, in this case, ought to be—
the value of the flour, at the time, when, and the place,
where, the contract was to be performed ; and not the money
advanced. They insisted, that the contract was still *open,*
having never been rescinded ; that this action was *founded
upon it ;* that the covenants were *independent ;* and that, as
there was an undisputed breach on the part of the defendant,
the plaintiffs were entitled to recover such damages, and such
only, as the contract would give. The *money* paid by a
party, in part-performance of a contract, can be recovered
back, only in case that contract is *rescinded ;* and then only
in an action of *indebitatus assumpsit.* To establish these
positions, they cited *Terry & al.* v. *Duntze,* 2 *H. Black.* 389.
1 *Wms. Saund.* 320. n. (4.) *Thorpe* v. *Thorpe,* 1 *Salk.* 171.
*Havens* v. *Bush,* 2 *Johns. Rep.* 387. *Seers* v. *Fowler,*
2 *Johns. Rep.* 272. *Wilcox* v. *Ten Eyck,* 5 *Johns. Rep.* 78.
*Weston* v. *Downes, Doug.* 23. *Power* v. *Wells, Cowp.* 818.

*Benedict* and *Sherman,* contra, remarked, that the cove-
nants must be taken to be either *independent* or *dependent.*
If they are independent, and the defendant's inferences are
correct, the plaintiffs have not recovered enough, as the val-

ue of the flour would exceed the present verdict. But of this the defendant cannot complain, on a motion for a new trial. The verdict has done *him* no injustice. If the covenants are dependent, the plaintiffs are entitled, and would have been, had they advanced nothing, to recover, at least, nominal damages for the breach. In addition to these, they are also entitled to recover *as damages* what they have paid. This sum they have lost, by the defendant's total breach of contract.

The defendant cannot say to the plaintiffs, " if I had performed my contract, you would have sustained a loss ; and therefore, you shall suffer the same loss now." If the defendant had performed his part of the contract, though the flour were not worth the money advanced, the plaintiffs must have borne the loss. But the defendant cannot, without performance, claim the benefit of a loss, which has never accrued. He is not to derive the same advantage from a breach of his contract, which he might have had from a performance of it.

SWIFT, Ch. J. Where a man contracts to deliver any article besides money, and fails to do it, the rule of damages is the value of the article at the time and place of delivery, and the interest for the delay. Though the promissee may have suffered a great disappointment and loss, by the failure to fulfil the contract ; yet these remote consequences cannot, in such cases, be taken into consideration by courts, in estimating the damages. It is always supposed, that the party could have supplied himself with the article at that price ; and if he intends to provide against the inconvenience arising from such a disappointment, he must make a contract adapted to such objects. In the present case, if the plaintiffs had paid to the defendants the full sum for the two thousand barrels of flour contracted for, then they would have been entitled to recover the value of it at *New-Orleans,* where it was to have been delivered. If the price had risen between the time of purchase and delivery, they would have made a profitable speculation ; otherwise, if it had fallen. If they had paid nothing, if the flour had advanced in price, they would have been entitled to recover the amount of such advance. If the price had fallen, they would have been entitled to recover nominal damages for the breach of the contract ; though they might

have been subjected to a great loss, if the contract had been fulfilled. This proves, that the actual damages suffered by a party cannot always be the rule of estimating damages for a breach of contract.

In this case, the plaintiffs advanced a part of the purchase money ; that is, the sum of five thousand dollars ; and no parallel case has been adduced to shew what ought to be the rule of damages for not delivering the flour. I think the one adopted by the court at the circuit, to be just and reasonable. The defendant has violated his contract ; and it is not for him to say, that if he had fulfilled it, the plaintiffs would have sustained a great loss, and that this ought to be deducted from the money advanced. It is not for him to say, that the plaintiffs shall only recover the reduced value of a part of the flour which was to have been delivered, in proportion to the advanced payment. The contract was for the delivery of an entire quantity of flour ; and no rule can be found for an apportionment in such manner. The plaintiffs have been disappointed in their arrangements ; the defendant has neglected his duty ; and retains in his hands five thousand dollars of the money of the plaintiffs, without consideration. Nothing can be more just than that he should refund it ; and I am satisfied, that a better rule cannot be adopted in similar cases.

TRUMBULL, J. concurred, substantially, in this opinion. He remarked, that the plaintiffs, by paying the 5,000 dollars, have performed all that the contract required them to do, before the receiving of the flour. As the flour was not delivered, they were not bound, by the contract, to pay any more. The defendant, on the other hand, has wholly failed of performance, at the time stipulated. He is liable for the breach ; and it will be conceded, that if the plaintiffs had done nothing, they would be entitled to judgment, with nominal damages. Shall they not now recover what they have advanced upon the contract, previous to the breach ? This sum is the actual loss, which they have sustained, by the breach. Complete justice has been done ; and no new trial ought to be granted.

EDMOND, SMITH, BRAINARD and PETERS, Js. were of the same opinion.

*Hartford,*
June, 1818.

Bush
*v.*
Canfield.

HOSMER, J. This is an action on an express contract, to recover damages for its non-performance. On the 20th day of *February* 1812, the defendant agreed to deliver to *Norton & Bush,* at *New-Orleans,* two thousand barrels of superfine flour, on or before the 1st day of *May* then next. On their part, they contracted to pay 7 dollars per barrel. Of this sum 5,000 dollars were advanced, and the residue was payable at different periods, posterior to the time prefixed for the delivery of the flour. It was not delivered, and the jury have given their verdict for damages in the sum of 6,771 dollars. At the time when the flour should have been delivered, the price of that article, at *New-Orleans,* was 5 dollars, 50 cents, per barrel, and no more. The court directed the jury, that " if they found the issues joined in favour of the plaintiffs, they should find for them to recover of the defendant 5,000 dollars, being the amount of the sum advanced by the plaintiffs to the defendant, and the interest thereof from the time the same was so advanced." For a supposed misdirection, the defendant now applies for a new trial.

Had the contract been rescinded, in an action for money had and received to recover the sum advanced, the charge to the jury would have been precisely correct. The agreement, however, was open ; the action is founded upon it, and damages are demanded for the breach of it. So long as the agreement is open, it must be stated specially. *Weston* v. *Downs, Doug.* 23. *Towers* v. *Barret,* 1 *Term Rep.* 133. 1 *Chitty,* 341. and the consideration paid cannot be recovered. The case of *Dutch* v. *Warren,* 1 *Stra.* 406. cited in 2 *Burr.* 1011. does not contravene, but supports, the latter branch of the above proposition. Although an action for money had and received was sustained, (in my opinion, illegally,) while the agreement remained in full force ; yet the rule of damages, deliberately settled, was, not the money advanced, but the damages in not transferring the stock, at the time prefixed. The sum paid by the plaintiff was 262*l.* 10*s.* The stocks, however, having fallen before it was to have been transferred, the verdict, being the price of stock at the infraction of the contract, was for 175*l.* only.

The jury should have been directed to give the plaintiffs the damages sustained by the breach of the agreement, on the day when it should have been performed. In other words, the plaintiffs were entitled to the price of the flour estimated

*Hartford,*
*June, 1818.*

Bush
*v.*
Canfield.

at 5 dollars, 50 cents, per barrel ; and on this basis, connected with the other circumstances relative to the point of damages, the verdict should have been founded. The rule laid down, is indispensable, to give efficacy to the implied condition attendant on every express covenant. " If I fail in my part of the agreement, I shall pay the other party such damages as he has sustained by such my neglect or refusal." 2 *Black. Comm.* 443. In conformity with this, it is said by *Spencer,* J. in *Pitcher* v. *Livingston,* 4 *Johns. Rep.* 15. that " in actions for a breach of covenant, the damages are to be estimated according to the value of the thing when the covenant was broken." There have been many determinations for not transferring stock pursuant to contract ; and the established rule of damages is, the price of it at the time of trial, or on the day when it should have been transferred. *Shepherd* v. *Johnson,* 2 *East,* 211. *M'Arthur* v. Lord *Seaforth,* 2 *Taunt.* 257. In the case of *Gray* v. *Portland Bank,* 3 *Mass. Rep.* 390. it is said by the court, " that the price of stock at the time it should be transferred or delivered, (and the same rule applies to other personal property,) shall be that by which the damages shall be assessed."

He who controverts the principle advanced in the cases cited, must supply a better. If he would sustain the charge to the jury in this case, he must contend, that for breach of contract the sum to be recovered is, not the damages sustained by the non-performance, but the consideration which the plaintiff may have advanced. A rule so unwarranted as this, so opposed to familiar practice, and numerous decisions, so arbitrary, bearing not at all on the contract of the parties, and mistaking the very ground of the complaint, cannot be supported.

It is contended, that the plaintiffs have not recovered a greater sum than is due to them ; and that justice does not require a new trial. To this proposition I cannot accede. If the benefit derivable to the plaintiffs from a compliance with the agreement, can be ascertained, we shall possess an infallible criterion of the damages sustained. Now the facts stated, furnish unquestionable *data,* and reduce the enquiry to a mere question of calculation. The damages sustained, were, the price of the flour when the contract was first broken ; that is, the sum of 11,000 dollars. If the contract is to

be considered as mutual and independent, the plaintiffs are entitled to that sum, and are bound to pay the defendant 14,000 dollars, the sum stipulated for the purchase. But, if the agreement is dependent on the prior performance of the contract by the defendant, there must be deducted from the above mentioned sum, the balance which would be payable to him on delivery of the flour, that is, 9,000 dollars. The effect of this would be precisely the same, as if the flour had been delivered, and the plaintiffs had performed the agreement on their part. *Quacunque via data*, the verdict is not conformable to legal justice. This view of the subject makes it unnecessary to consider what was the precise character of the contract.

That the plaintiffs have sustained a considerable loss on the supposed legal result, is unquestionably manifest. A fallacy has existed in not ascribing it to the right cause. It did not arise from the non-performance of the defendant's agreement. Before the period had arisen when the flour was to have been delivered, the loss had accrued by the fall of it in the market. It is equally obvious, that the defendant had derived a correspondent benefit. The verdict of the jury, in opposition to the contract of the parties, reverses their condition. It rescues the plaintiffs from their loss, and deprives the defendant of his gain. In effect, it arbitrarily subjects the defendant to a warranty, that flour shall not sink in price, and renders him the victim of the plaintiffs' unfortunate speculation.

It has been contended, that in as much as the defendant did not fulfil his contract, he ought not to derive a profit from it. To this I reply, that the obligations of the parties depend exclusively upon their own voluntary agreement. There was a hazard accompanying the contract. If flour rose in the market, the defendant would become, proportionably, a loser; and if it fell, he would be a gainer. The event on which the result was suspended, was favourable to him; and of this he cannot be deprived, unless it is the duty of courts to *make* contracts, *not to enforce* them.

I am clear in my opinion, that a new trial ought to be granted.

PETERS, J. The rule of damages prescribed by the court on the circuit, seems to have done substantial justice between the

*Hartford,*
June, 1818.

Bush
*v.*
Canfield.

parties ; as it is admitted, that in an action for money had and received, the charge would have been precisely correct. And we are now called upon to deprive the plaintiffs of a righteous verdict, and to turn them round to another form of action wherein the damages must be *the same,* or to another trial wherein the damages will be *greater,* on a mere technical objection. If, however, the rule relied on be fixed and inflexible, this must be done ; and instead of *fiat justitia,* our maxim must be *fiat lex....ruat cœlum.* But with due deference to the learned opinion, which we have just heard, the rule of damages, in cases of this sort is not so much like the laws of the *Medes* and *Persians* as it has been represented. Even in *Gray* v. *The Portland Bank,* 3 *Mass. Rep.* 390. though *Sedgwick,* J. said, that " the price of personal property, at the time when it should be delivered, shall be that by which damages shall be assessed ;" yet *Sewall,* J. fortified this rule by the equitable circumstances of the case—" that the plaintiff made no payment, and after tendering it, was not obliged to deposit his money, or hold it unemployed." But this decision, though made by *two* able and learned judges, is not to be considered as authority in opposition to a recent and unanimous opinion of the court of King's Bench ; whose decisions are the best evidence of the common law. I allude to the case of *Shepherd* v. *Johnson,* 2 *East,* 211. which was debt on bond, conditioned to replace stock on a given day ; and the question was, whether damages should be calculated at the price when the stock was to be delivered, or on the day of trial ? The learned judge who tried the cause, was of opinion, that as the agreement had been broken, and the stock never replaced, the plaintiff was entitled to recover the larger sum, (the value on the day of trial,) and the verdict was taken accordingly, with leave to the defendant to move the court to reduce the damages. But this opinion was sanctioned by the court. *Grose,* J. said, " the true measure of damages, in all these cases, is that which will completely indemnify the plaintiff for the breach of the engagement. If the defendant neglect to replace the stock at the day appointed, and the stock afterwards rise in value, the plaintiff can only be indemnified by giving him the price of it *at the time of trial.* And it is no answer to say, that the defendant may be prejudiced by the plaintiff's delaying to bring his action ; for it is his own fault that he does not perform his engage-

ment at the time." The same measure of damages was adopted before Lord *Eldon* in *Payne* v. *Burke, Mich. T.* 1799. 2 *East*, 213. n.

But it is said, the rule of damages in *assumpsit* is not applicable to this case, because here is an express contract. But in *Weaver* v. *Bentley,* 1 *Caines,* 47. money advanced under a sealed contract, was recovered in *assumpsit ;* and the court said, " We are of opinion he (the plaintiff) had his election, either to proceed on the covenant, and recover damages for the breach, or to disaffirm the contract, and resort to his *assumpsit* to recover back what he had paid." And *Livingston,* J. who dissented merely with respect to the form of action, said, that covenant will lie on the instrument to recover back *all that has been paid.*

But what can the defendant gain by a new trial? Does he wish to be subjected to the value of the flour, when it should have been delivered, or at the time of the trial, at the hazard of recovering the sums stipulated, without any pretence of fulfilling the contract on his part? Or, does he expect the court will aid him in his iniquity, by giving him 3,000 dollars of the money advanced for his breach of faith? Though the flour might have been purchased at *New-Orleans,* at less than the stipulated price, *non constat* that it would have been an unprofitable cargo in some other market. And after the plaintiffs had advanced their money, and been at the hazard and expense of a voyage to *New-Orleans* to ship it home, or to some other market, is it to be endured that the defendant should pocket their money, and bid them defiance? " Flour, gentlemen," says this honest defendant, " is plenty and cheap at *New-Orleans.* You may buy it, if you can find money and credit, *there,* and get your money back, in *Connecticut,* when you can." I take it to be well settled, that " a new trial ought to be granted to attain *real justice,* but not to gratify litigious passions upon every point of *summum jus*"— *Farewell* v. *Chaffey & al.* 1 *Burr.* 54. : That " an application for a new trial is to the discretion of the court, who ought to exercise that discretion in such manner as will best answer the ends of justice ;" and where " complete and substantial justice has been done," the court will not " send the cause down to be re-tried on a technical objection in point of law"—*Edmonson* v. *Machell,* 2 *Term Rep.* 4. : That " though the ground of the verdict should be wrong, yet if it clearly appeared to the court now, that, upon the whole, no

*Hartford,*
*June, 1818.*

Bush
*v.*
Canfield.

injustice had been done to the defendant ; or if it clearly appeared to the court now, that the plaintiffs, by another form of action, could recover all they have got by this verdict ; the court ought not to grant a new trial." *Foxcroft & al.* v. *Devonshire & al.* 2 *Burr.* 936.

GOULD and CHAPMAN, Js. gave no opinion, having formerly been of counsel in the cause.

New trial not to be granted.