## WILLIS AND ANOTHER V. DUDLEY.

1. Where one purchases a slave with a warranty of soundness, which proves
to be utterly valueless, the vendee, in an action on the warranty, is enti-
tled to recover what would have been the *value* of the slave, had he been
sound, without respect to the price stipulated—the *value* appearing to be
greater than the *price*.    COLLIER, C. J., dissenting, maintained that the
*price paid* was conclusive as to the *value*, and damages could not be re-
covered beyond it, unless they were increased by interest thereon, medi-
cines, &c., furnished.

Error to the Circuit Court of Lowndes.

THIS was an action of covenant, at the suit of the defend-
ant in error, to recover damages of the plaintiffs, for the breach
of warranty contained in a bill of sale of a slave named Major.
The cause was tried upon the plea of covenants performed, a
verdict returned for the plaintiffs for $970 45; and judgment
was rendered thereon.    From a bill of exceptions sealed at
the instance of the defendants, it appears, that in December,
1843, they sold to the plaintiff certain slaves, among which

was one named Major, valued at $600, who, by a bill of sale, was warranted sound. This slave died in June, 1844, and his body was dissected by a physician, who testified, he believed that he had been diseased several years, and had repeated attacks of the disease. Plaintiff then proved what would have been the value of Major, at the time of the sale to the plaintiff, if he had been perfectly sound, and prayed the court to charge the jury, that such value, with interest would be the proper measure of damages, if they found for the plaintiff. To this charge the defendants excepted, and asked the court to charge, that as the price given for Major by the plaintiff, had been proved, that sum, with interest, was the criterion of damages. This latter instruction was refused, and the court charged the jury as prayed by the plaintiff.

J. A. Elmore, for the platntiff in error, insisted, that as the parties themselves had fixed the value of the slave, the jury should have been restricted to that sum with interest, in estimating the plaintiff's damages. [1 Taunt. Rep. 566; 3 Esp. Rep. 82; 5 Wend. Rep. 535; 1 N. & McC. Rep. 210; 1 McC. Rep. 379; 2 Id. 413; 7 Dana's Rep. 380; 8 Port. R. 428; 9 Ala. Rep. 252.]

C. G. Edwards, for the defendant in error. It may be, that the rule to estimate the damages may in some cases be such as the plaintiffs in error contends, but not under the proof in the cause. [4 Phil. Ev. 105; 2 Steph. N. P. 1301; 2 Speers' Rep. 594; Kornegay v. White, at the last term.] It cannot be presumed that other facts than those shown were proved, for the purpose of reversing the judgment.

The Judges delivered their opinions *seriatim*.

COLLIER, C. J.—It is a general rule of law respecting the measure of damages, that where an injury has been sustained for which the law gives a remedy, that remedy shall be commensurate with the injury sustained. [4 Dall. Rep. 206; 7 Mass. Rep. 254; 16 Pick. Rep. 194.] In an action upon a covenant of warranty contained in a deed conveying land, the measure of damages, in most of the States of the Union, is the consideration money, or the proper proportion of it,

with interest; though in some, the course is to award damages to the value of the land at the time of eviction. [2 Greenl. Ev. 217-18; 1 Kinne's L. Comp. 311-12, and cases cited in each.]

In Hogan v. Thorington, 8 Porter, 428, which was an action for falsely warranting a slave to be sound, we said both reason and authority would seem to graduate the plaintiff's recovery by the injury he has suffered in consequence of the false warranty. That a plaintiff in general is entitled to recover for all losses resulting directly from a breach of the warranty; so that in some cases he may recover even beyond the price he has paid for the thing warranted. "Thus the purchaser of a slave warranted sound, who has proved entirely valueless, is entitled to be reimbursed, not only the purchase money, but all proper expenditures for medical aid," &c. To the same effect is Kornegay v. White, at the last term, in which it was held, that it was not only allowable to compensate the vendee for expenditures for medicines and the services of a physician, but also to calculate "interest upon the sum which the plaintiff had been induced to pay more than he should by the false warranty."

To enable the vendee to bring an action for the breach of an express warranty, it is not essential to tender a return of the goods; and where there has been no offer to return, the measure of damages is merely the difference between the sum given and the real value. [1 H. Bla. Rep. 17; 2 T. Rep. 745; 1 Taunt. Rep. 566; 3 Stark. Rep. 32; see also, 2 Chit. R. 416; 7 Taunt. Rep. 153; 4 Phil. Ev. 105-6, and cases there cited; also, note 306, p. 196; 3 Stark. Ev. 1666, 1667.] It is said, the plaintiff is in general entitled to recover in respect of all losses which may have resulted from the breach of warranty. Accordingly, in an action upon a warranty of chain cable, it was held that the plaintiff might recover the value of an anchor which was lost through the insufficiency of the cable, proof being adduced that the ship would have been lost if the cable had not been slipped. [8 Taunt R. 535; 2 Moore's R. 582.]

The law is thus laid down by Starkie, in his Treatise on Evidence, (3 vol. 1666.) "If a warranted horse has been returned, the measure of damages is the price paid. If he

has not been returned, the measure of damages is the difference between his real value and the price paid." See 1 Taunt. Rep. 566. "In *assumpsit* upon the *warranty of goods*," (says Mr. Greenleaf, 2 vol of Ev. § 262,) "the measure of damages is the difference between the value of the goods at the time of sale, if the warranty were true, and the actual value in point of fact. If goods are warranted as fit for the particular purpose which they are asked for, the purchaser is entitled to recover what they would have been worth to him, had they been so. If they have been received back by the vendor, the plaintiff may recover the whole price he paid for them; otherwise he may resell them, and recover the difference between the price he paid and the price received." Another learned author says, "It is not essential to enable the vendee to bring an action for the breach of an express warranty to tender a return of goods; and where there has been no offer to return, the measure of damages is merely the difference between the sum given and the real value." [2 Saund. on Pl. and Ev. 917.]

If by the value of the goods we are to understand, what they would have been worth to the purchaser, if they had been such as the warranty affirmed them to be, without regard to the price paid for them, then I unhesitatingly say, that neither of the learned authors from whom we have quoted, are sustained by the authorities they respectively cite. I have carefully examined the citations made by *Greenleaf* and *Saunders,* and in none of the cases did the damages exceed the price paid, unless they were increased by the addition of interest, a charge for keeping a horse, costs and damages in some other action, to which the vendor was liable as a consequence of a false warranty, or some other kindred cause. The inquiry was not as to what would have been the value of the property, if sound, but the court proceeded upon the idea, that the price paid, indicated the value; and I am constrained to conclude, that *price paid, and value,* are frequently used as synonymous.

In Lewis v. Peake, 7 Taunt. R. 153, it was held, that where A sells a horse to B, with a warranty of soundness, and B to C with a like warranty—C recovers the price of the horse upon the ground of his unsoundness, in an action a-

gainst B, of which A has no notice, B is entitled to recover from A not only the price of the horse, but the costs of the action by C. These costs and damages being the damages which B sustained by the warranty.

The measure of damages, in an action brought for a breach of an implied warranty of title, in the sale of a horse is the price paid, interest thereon, and the costs recovered against the purchaser or his vendee, in case of a suit by the owner, and notice to the vendor. [5 Wend. Rep. 535; see 1 John. Rep. 517.]

Williamson v. Canaday, 3 Ired. Rep. 349, does not determine that where a slave warranted sound, is diseased, and wholly valueless, the measure of the vendee's is damages the value of the slave had he been sound, irrespective of the price paid. That was an action for a breach of warranty, that a slave was sound at the time of his sale to the plaintiff, who at that time had actually taken the infection of the small pox, and soon afterwards died of that disease. The supreme court of North Carolina, held that it was not error in the judge at the circuit to tell the jury that they might take the price given for the slave as the measure of the damages—there being no objection taken to this instruction on the trial—the slave having been a total loss to the plaintiff, and the price, without any evidence to the contrary, being considered the market value of the slave. What is here said cannot, in my judgment, be dignified even as a *dictum*, that the "market value," if there had been proof of it, would furnish the *criterion* of damages.

A syllabus of Ferris v. Barlow, et al. 2 Aik. Rep. 106, is thus stated in Washburn's Dig. "as a general rule of damages in case of a breach of contract, the law requires the defendant to make the plaintiff whole, that is, to place him in as good a situation as he would have been had the defendant performed his contract. The amount of consideration paid is not the rule." I have not had access to the report of this case, but I am quite sure that the action was not brought to recover damages for a breach of warranty. I imagine when examined, it will be found to be the case of an executory contract, perhaps for the delivery of goods; in such a

118

case the rule laid down is clearly correct. [Yoder v. Allen, 2 Bibb's Rep. 338, is a case of that character. See also, 16 Pick. Rep. 194; 8 Id. 9; 23 Id. 400; 3 Cranch's Rep. 298; to which many other citations might be added not only of this, but of other courts; in some of which the law has been held to be the same upon a breach of an executory contract, to convey land. [6 Sergt. & Watts Rep. 527; Freem. Rep. (Miss.) 209.]

Coolidge v. Brigham, 1 Metc. 547, was doubtless decided upon a correct principle. That was an action on a warranty that the indorsements on a note of a third person, which was transferred by the defendant to the plaintiff, were genuine. It was held that the measure of damages was the difference between the amount of the note and its actual value. If the defendant had guarantied the note, he would have been charged with its amount, but as the damage resulting from the breach of warranty of genuineness only went to the extent of its depreciation; in consequence of the indorsements not being genuine, the plaintiff could recover nothing more. I confess I cannot very well perceive the pertinency of this case to the point in hand, and only notice it because it has been brought to our view.

Cox v. Walker, 6 Ad. & E. Rep. 519, note (a,) was an action for the breach of warranty of a horse sold as sound; and the special damage alledged in the declaration was the plaintiff's expense incurred by reason of the warranty, and his loss of gains and profits in re-selling the horse. The plea denied the unsoundness. It appeared that the plaintiff bought the horse of the defendant for £100, and had been offered £140 for him; but the horse proving unsound, the plaintiff was obliged to give up the bargain and sell him for £49 7s. *Lord Denman, C. J.*, directed the jury, that the plaintiff was entitled to recover the difference between the price at which he had sold, and the actual value of the horse if he had been sound at the time of such sale; and he left to the consideration of the jury as a measure of the value, the price offered for the horse while in the plaintiff's hands. The jury found for the plaintiff, £90 13s. damages. A rule was obtained for a new trial, on the ground of misdirection, or for a reduction of damages, and cause was shown before the

Willis and another v. Dudley.

court of King's Bench. The court took time for consideration; and the case stood over for several terms, and was at length compromised. While the case here cited shows what was *Lord Denman's* opinion, it proves nothing more; but leaves it to be inferred, that his brethren were not prepared thus to declare the law. Clare v. Maynard, 6 Ad. & E. R. 519, was an action for breach of warranty of a horse, it was decided that the plaintiff could not recover as special damage the loss of a bargain for the re-sale of the horse, though the contract of re-sale, at a profit, had been actually completed. Whether or not he could have recovered if the declaration had alledged, and it had been proved that the plaintiff had been at expense in advancing the value of the horse, was left undecided—*Lord Denman remarking*, that upon a proper declaration, he should have adhered to his opinion in Cox v. Walker.

I will not extend this opinion, which has been already drawn to a length beyond what I could have wished, by additional citations. We have seen that a different measure of damages is applied in respect to the breach of a contract to deliver property at a future day, than where the contract has been executed, and the vendee sues upon an allegation that the property was not such as the vendor warranted it to be. In the former, the plaintiff's damages are grauduated by the injury he sustained by the failure to deliver; and consequently, the value on the day appointed for that purpose, must under ordinary circumstances be a ruling criterion. This rule, as it will be seen by some of the cases cited, has been applied not only where personal estate is the subject of contract, but where the vendor has undertaken to convey lands.

Where lands have been sold with a warranty of title, if the vendee is evicted, the measure of damages in an action upon the covenant of warranty, ordinarily is, (as we have seen,) the consideration money, or the proper proportion of it with interest. Such is the rule in this State, and I can conceive of no sufficient reason, resting upon principle or authority, for maintaining that the vendor upon a false warranty of soundness of personal property, should be charged with the value of the thing rather than the price received by him. If sound property was worth more than the purchase money,

Willis and another v. Dudley.

and its value in market should be fixed as the measure of the vendee's damages, where it is wholly valueless; upon the same principle, where the market value is less than the price paid, the recovery of the vendee will be thus limited. It will happen as often as otherwise, that the vendee has paid too much for the thing, supposing it to be sound, and if the rule referred to should be established, he must, though he has sustained a total loss, fail to obtain a re-imbursement of what he has paid out.

The only safe rule then, in my judgment, is to consider the price paid as conclusive of the question of value, in an action upon the warranty of soundness—as the agreed value, not subject to modification by proof. Such a decision best comports with legal analogies, and will carry out the general understanding as to the law on this point, without allowing the vendor or vendee to speculate upon each other. Besides, we all know that slaves are frequently sold at a price below their market value, for the purpose of procuring for them a master of their own selection, or one who will certainly treat them with kindness, and retain them in his family. It would be exceedingly unjust in such cases, to charge the humane and honest vendor with damages beyond the price received by him; yet such will be the consequence of sustaining the judgment of the circuit court.

In respect to land, where there is a breach of the warranty of title, the consideration is the criterion of value. Upon the return of an article of personal property on the ground that it is not of the quality stipulated, the vendee only recovers the price paid, with perhaps interest, and such other special damages as he may alledge and prove. If it is of any value, and has not been returned, the vendee's recovery will be admeasured by the difference between the value of the article as it was, and the price paid for it, with such other legitimate items of special damage as results from the breach of warranty. How, consistently with this last proposition, the price paid may be disregarded where the article is valueless, is what I cannot very well perceive. Suppose in the present case, the slave had been worth one hundred dollars, then the plaintiff would have recovered five hundred dollars, with physician's bill, &c.; but being of no value, he is allowed to re-

Willis and another v. Dudley.

cover nine hundred dollars, so that if the case had been as supposed, he would have lost three hundred dollars, allowing for the value ; that is, his recovery would have been diminished to that extent.   But suppose that the vendee had made a bad bargain, and the market value, instead of being nine hundred, was three hundred dollars, the damages would be thus limited, if value irrespective of price governs; if however, the slave should be worth any thing, the plaintiff would recover the difference between this and the price paid.   Thus estimating the damages of the vendee at a greater sum where the slave was of some value than if he were worth nothing. I must say with all deference, that a rule of decision introductive of such incongruity, and so much at variance with all analogies, cannot, in my judgment, rest upon correct principle.    The views I have expressed are opposed to the ruling of the circuit court, and consequently I am of opinion that its judgment should be reversed and the cause remanded.

GOLDTHWAITE, J.—It is the general assertion of the text-writers, that a plaintiff suing for a breach of warranty, is entitled to recover as damages, the difference in value between the thing as it is warranted to be, and as it actually is, at the time of the warranty. [Steph. N. P. 1301; Chit. on Con. 137; Story on Con. § 551; 2 Greenl. E. § 262.] It does not appear, however, that this rule has yet been settled, or at least we have found no case in which it is made the turning point for decision.    If they are reported aright, Lord Eldon, in Carlos v. Harvey, 3 Esp. 82, and Sir James Mansfield, in Caswell v. Coan, 1 Taunt. 566, have both asserted the rule, and Lord Denman, in Cox v. Walker, 6 A. & E. 523, is reported to have gone to the extent of ruling, that an offer to purchase the article at an advanced price, made by a stranger, was a matter to go to the jury, as a means by which to estimate the value of the article in a sound condition.    This, as a proper measure of damages seems to have been doubted in Chase v. Maynard, 6 A. & E. 519, but we do not understand the court as denying the rule that this difference in the value of the thing as warranted, and as it actually is, to be the true measure of damages.    In all the cases of this nature, where the article warranted has been subsequently sold, the price ob-

tained on the re-sale has usually been considered as affording a proper criterion of value, though certainly it never could be supposed this was conclusive. In the American courts there seems to be the same absence of decision on the precise point though there are several cases which show that the consideration paid for the warranty is not the usual, nor the only criterion for the damages. In Ferres v. Barlow, 2 Aik. 106, it is said to be the general rule, in cases of breach of contract, for the defendant to place the plaintiff in as good a situation as he would have been in if the contract had been performed, and that the amount of consideration paid is not the rule. In Williamson v. Canaday, 3 Ire. 349, the precise rule which we have stated from the text-writers is conceded to be the true one, though the court refused to reverse a decision when the lower court had submitted the cause to the jury on the point that the consideration money, with interest *might* be given. See also, Hogan v. Thorington, 8 Porter, 428; Kornegay v. White, at the last term. In principle it seems to us exceedingly difficult to distinguish a warranty of personal chattels from any other contract in relation to such—especially with reference to the mode of ascertaining the damages resulting from a breach of the warranty. It is the well established rule, that if one contracts with another for the delivery of goods, at a particular day, to be *then* paid for, the measure of damages is the value of the goods at that time. [Sheppard v. Hampton, 3 Wheat. 200; Day v. Dox, 9 Wend. 129; Bailey v. Clay, 4 Rand. 346; Shaw v. Nodd, 8 Pick. 9.] But it is also said, the plaintiff may recover the consideration paid, though the goods have fallen in value, if they be not delivered. [Bush v. Canfield, 2 Conn. 485.] When the price is paid at the time of the contract, the increased value of the goods, between the time appointed for delivery and the suit, indicates the extent of the damages. [Clark v. Pinsey, 7 Cowan, 781.] In each of these cases the purchaser has the benefit of his bargain, and is not required to be content with a return of the money paid out, even with interest on it. In the case of a warranty, as we find it in the books, the rule is greatly less favorable even when applied in its most liberal extent, than an executory contract to deliver merchandize, for the warrantor is not responsible for any subsequent rise

Willis and another v. Dudley.

in price, although that may be much greater at a subsequent time than it is when the warranty is made. By his contract he does not undertake further than the thing is of a particular quality or description, at the time of the warranty, and there is no hardship in requiring him to answer in damages to the value of a thing, of the quality or description he has affirmed his to be. It is this affirmation which is the inducement to purchase, and if it fails, the buyer may rescind the contract within a reasonable time, by returning the thing, or he may insist on being paid the difference in value between the thing as it is, and the value that it would have had at the time, if as it was warranted to be. In a very elaborate opinion of the court of appeals of South Carolina, it is supposed the consequence of holding the seller responsible for any thing beyond the price received, is to let all the subsequent increase in value of the thing sold, and the alarming case is put of holding the vendor of a female slave liable on his implied warranty of title, for all her subsequent progeny. [Ware v. Weathnell, 2 McCord, 413.] We apprehend no such consequence follows the adoption of the rule as stated by us. We think it certain the vendor would only be bound to answer for the value of the slave as she actually was at the time of the sale, without reference to the number or value of her increase.

Upon the whole, a majority of the court is satisfied, the law was correctly expounded to the jury, in the charge of the circuit court.

Judgment affirmed.

ORMOND, J.—I concur in the opinion of my brother GOLDTHWAITE.