## Woodbury *v.* Jones.

Where the defendant, by letter of August 12, 1859, proposed to the plaintiff, then living in Minnesota, that if he would come back to New-Boston he might move into the defendant's house, and he would give the plaintiff and his wife a year's board, and he might carry on the defendant's farm on any terms he might elect; and the plaintiff did return to New-Boston in November following, when an arrangement was made about carrying on the farm; but the defendant soon after refused to allow the plaintiff to carry on the farm, or to furnish the board; — *Held*, that it was competent for the jury to find an acceptance of the proposal in the defendant's letter, and, if so found, to take into consideration, in assessing the damages, the expenses of removing to New-Boston.

Assumpsit. The writ was dated April 13, 1860, and contained three counts. Plea, the general issue.

The declaration alleged, in substance, that the defendant, at New-Boston, on the 12th day of August, 1859, in consideration that the plaintiff, who then resided in the State of Minnesota, would sell his property and remove to New-Boston, and take charge of and carry on the farm of the defendant, there situated, and reside with the defendant on the farm, promised the plaintiff to furnish for himself and wife board and house rent for the space of one year, free of charge, and that the plaintiff should have the privilege of cultivating and carrying on said farm upon such terms as he might elect; that the plaintiff thereupon sold his property in Minnesota, and removed to New-Boston in the month of December, 1859, with his family, to reside with the defendant and carry on the farm, and that he has at all times been ready to cultivate and reside upon the farm; yet the defendant, on the first day of January, 1860, refused to furnish board and house room for the plaintiff and his wife, and to permit the plaintiff to carry on the farm.

The plaintiff introduced a letter from the defendant, referred to in the argument, dated New-Boston, August 12, 1859, which he testified that he received about the first of October, of that year, at his residence in Hampton, Minnesota; that it was missent, and thus arose the delay in its reception. This letter contained this clause: "If you can settle up your business and like to come back, and think it best, you can move into the house with me, and I will give you and wife a year's board, and you may carry on the farm at any lay you may wish to."

He testified that on receiving this letter he wrote to the defendant, making some inquiries, but that he did not, in the letter he sent, accept the proposition of the defendant; that he did not write to the defendant again, but afterward sold his personal property, and in the month of November, of that year, went from Minnesota to New-Boston, and that soon after his arrival there he made a bargain with the defendant to carry on his farm; and that he and his wife, in December following, went there to reside, and remained about a week, when the defendant said that he could not consent to let the farm to the plaintiff, or let him carry it on; that he could not stay, and that he and his wife had better leave; and that thereupon they did leave. He testified that said bargain was as follows: That the defendant proposed that if the plaintiff would carry on the

farm he would give him all the income of the farm and the growth of the stock, and would furnish all the meat, drinks and breadstuff necessary for the family; and that the plaintiff accepted this proposition, or said that he would do it; and that "when the defendant told me to leave, I told him I had come from Minnesota to carry on his farm, and for nothing else, and it would be a great damage to me."

To show the amount of damages, the plaintiff also testified, subject to the defendant's exception, that in consequence of his uncle's (the defendant's) invitation to him, as embraced in his letter, he made up his mind to accept his offer, and accordingly he proceeded to rent his farm in Minnesota, which he owned. "I sold my wheat, of which I had 195 bushels, at 57 cents, on an average, per bushel. In a month or two afterward wheat advanced to 80 cents. Sold one pair of oxen, two cows, some young stock, my potatoes, beans, &c.; also, my farming tools, including a wagon, plows, &c.; all at a sacrifice. Left 200 bushels of corn, unsold; also, 180 bushels of oats. Brought on my bedding, wearing apparel, &c., here. In consequence of my disappointment had no regular employment for self and wife after December 12, to April 1, 1860. I paid $90 for fare of self, wife and child, and freight of my goods from Minnesota to New-Boston."

The testimony of the plaintiff and the letter of August 12, 1859, was all the evidence introduced by the plaintiff, and the defendant moved for a nonsuit, which was overruled by the court.

The defendant then introduced a letter from the plaintiff to him, dated at Hampton, Minnesota, October 4, 1859, being the one referred to by the plaintiff as written on the receipt of the one of August 12, 1859. Also another letter, written by the defendant to the plaintiff, October 16, 1859, and produced by the plaintiff; and the defendant testified in the cause, which was the only evidence introduced by him. These letters were referred to in argument.

Upon the question of damages, the court, among other things, instructed the jury that it was proper for them to look at the situation of the plaintiff, his residence in Minnesota, and see whether he made any sacrifices in the sale of his property, or otherwise, in coming here; that the fare and expenses of himself and family in coming from Minnesota to New-Boston, as also the loss he suffered in the sale of his property, were proper to be considered in making up the damages.

To this part of the charge the defendant excepted, and the jury, having returned a verdict for the plaintiff for $90, the defendant moved to set the same aside and for a new trial, for supposed error in the rulings of the court and said instructions to the jury.

*I. A. Eastman*, for the defendant.

1. The declaration alleged a promise made on the 12th day of August, 1859, to furnish the plaintiff and his wife with board and house rent one year, and to give him the privilege of carrying on the defendant's farm. The plaintiff's evidence showed that no contract was made till November, 1859, after the plaintiff had come to

New-Hampshire, and that the contract then made was essentially different from the one declared on. There was, therefore, a fatal variance between the declaration and the proof. This was stated at the trial, and if necessary we shall wish the case amended, so as to show it.

2. Upon the contract declared on, the damages to be recovered could only be for the value of the board and house rent, and for the privilege of carrying on the farm. Upon the contract proved, the damages would be the income of the farm, growth of the stock, meat, drinks and breadstuff for the family. All the evidence therefore that was excepted to of what was done in Minnesota, &c., was incompetent, and the ruling of the court admitting it was erroneous.

3. And so with the instructions given to the jury; the matters stated by the court as proper to be reckoned in making up the verdict were not promised to be paid for by the defendant.

*Morrison, Stanley & Clark*, for the plaintiff.

1. There was no variance between the declaration and proof in this case. The consideration for the defendant's promise was correctly stated, and the defendant's contract proved substantially as alleged. The declaration contained three counts. In the first, the defendant's promise was alleged to have been in consideration "that the plaintiff would sell his property in Minnesota, return to New-Hampshire, and carry on the defendant's farm." In the second, in consideration that the plaintiff would come to New-Hampshire and carry on the farm. In the third, mutual promises were alleged. It is true the time stated in the declaration is August 12, 1859, but the contract is alleged to have been made at New-Boston, in this State, and this is not like the case of a bill of exchange, or promissory note, where the date is material. *Atlantic Insurance Company* v. *Sanders*, 36 N. H. 261. The defendant's undertaking or promise was stated to be that he would furnish board and house rent for the plaintiff and his family for one year, free of expense, and would permit him to carry on the farm upon such terms as he might elect. The proof was, that this was the first proposition, and that afterward the defendant told the plaintiff he would give him the income of the farm, and the growth on the stock; that he might live in the house with him, and that he would furnish all the meats, drinks and breadstuffs for the family. Meats, drinks and breadstuffs, with the privilege of occupying the house, would be substantially board, as we understand it, and we submit that there was no variance in this respect, and if there was the exception, it comes too late after verdict. The defendant should have relied upon his motion for a nonsuit. *Smith* v. *Eastern Railroad*, 35 N. H. 357. But the motion for a nonsuit was waived by proceeding and putting in evidence. *Quimby* v. *Melvin*, 35 N. H. 207; *Oakes* v. *Thornton*, 28 N. H. 47.

2. The instructions of the court, upon the question of damages, were sufficiently favorable to the defendant. The plaintiff was entitled to be remunerated for the loss sustained by the nonfulfillment of the contract, and the defendant was liable for such damages as necessarily resulted from his breach of the contract. The defend-

ant's promise was in consideration that the plaintiff would dispose of his property in Minnesota, and come to New-Boston and carry on his farm. Why may not the expenses incurred in coming to New-Hampshire, that being á necessary incident to the plaintiff's performance of the contract, be recovered as damages? If the plaintiff had paid two hundred dollars in part performance of the contract, he might recover it as damages, and we think, upon the same principle, the jury might consider the evidence offered in this case; and that it was properly submitted to them on the question of damages, especially when they were allowed to consider, in that connection, the fact that the plaintiff had obtained employment from the town of Lyndeborough for himself and wife since April 1, 1860. 2 Pars. Cont. 432, ch. 7; *Jones* v. *Van Patten*, 3 Ind. 107, cited 18 U. S. Dig. 193; *Johnson* v. *Arnold*, 2 Cush. 46.

BELLOWS, J. The jury might have found the proposition of August 12, 1859, made by letter of the defendant, to have been accepted, and the bargain made upon that footing; and therefore the expense of removing to New-Boston would be part of the consideration for the defendant's promise, as is alleged in the declaration. If so, the jury might properly consider it, in assessing the damages, the same as if he had paid the defendant money which was stipulated to be paid as part of the consideration; and in such cases it seems to be well settled; *Stevens* v. *Lyford*, 7 N. H. 360; where it was held that money advanced toward the lumber contracted to be delivered, might be included, though not specially stated in the declaration.

In this case the recovery was upon a count on the contract itself. Indeed, it is clearly so upon principle; for if the whole price has been paid, the plaintiff is entitled to the full value of the goods to be delivered; but if nothing has been paid, the rule of damages would be the difference between the contract price and the real value, at the time and place of delivery; although, in any event, the plaintiff is entitled to some damages for the breach of the contract, even if the value of the goods has fallen below the contract price. So, if he has paid part, and the defendant fail to deliver the goods, the amount so paid may be recovered back as damages; and it has been held that the defendant, after receiving part payment, can not be permitted to show that, by reason of the fall in the price of such goods, the plaintiff would have suffered loss by the delivery of them. This was distinctly held in *Bush* v. *Canfield*, 2 Conn. 485, and so is *Dego* v. *Wagoner*, 19 Johns. 241. For aught we can see, the expense incurred by the plaintiff in removing to New-Boston was incurred in part performance of his part of the contract, as much as would have been the carrying on the farm, or the payment of money; and, upon the authority of *Stevens* v. *Lyford*, was properly considered in assessing the damages. This expenditure was distinctly contemplated in the contract itself, and, unlike the case of *Stevens* v. *Lyford*, it is set out in the declaration. Had the defendant broken his contract before the plaintiff had incurred any expense, or suffered any loss in the part performance of it, then only the

value of the contract beyond the cost of performance by the plaintiff of his part, would have been recovered; but as he had performed a part, it is obvious for that he should be indemnified.    This is part of the loss which the defendant's failure has occasioned the plaintiff; that is, the expenditure of money in performance of the contract directly, and which has proved fruitless by the defendant's failure, and comes within the rule laid down in Evans' Pothier 90, 91 (see 21 Wend. 348).    This view is sustained by numerous cases.    *Johnson* v. *Arnold*, 2 Cush. 46, where the defendant failed to supply the plaintiff with a stock of goods, at a certain store, to trade with on shares, as he had agreed, and the plaintiff was allowed to recover for the expense of removing to the place, and loss of time.    So is *Diggs* v. *Dwight*, 17 Wend. 71, where the defendant had refused to give possession of a certain tavern stand, which he had agreed to lease him.    The plaintiff was allowed to recover for the expense of his removal thither, although not specially stated in the declaration. A similar doctrine is laid down in Evans' Pothier 91, in case of the failure of a lessor's title to land.    So it was held that loss of time and expenses incurred in preparation for marriage, are directly incidental to the breach of promise of marriage.    *Smith* v. *Sherman*, 4 Cush. 408, *per Shaw*, C. J.

On a contract to pay a certain price for rafting logs, the defendant put an end to it before the labor began;—*held*, the plaintiff might recover the immediate loss in preparing to perform the contract, and in providing men for that purpose, though the defendant was allowed to show that it would cost more than was to be paid.    *Durkee* v. *Mott*, 8 Barb. 423.·    In *Nurse* v. *Barnes*, Thomas Raymond 77, where the defendant, in consideration of £10, agreed to let certain mills to the plaintiff for six months, and then refused to give possession, the plaintiff was allowed to recover for the loss of stock laid in, as damages; and the jury found £500, though the rent was only, in value, £20 per year.    So in an action for breach of an engagement. to let certain rooms, the plaintiff was permitted to show that they were taken for his wife, to be used in her business as a milliner, and that she had sustained a considerable loss from the passing by of a profitable season of the year for such business, this being an advantageous location; and the court held that this was not special damage which was required to be set out.    *Ward* v. *Smith*, 11 Price 11.

Upon these authorities it would seem that the plaintiff might recover for expenses incurred in removing his family, if done in execution of a contract then made, and probably also for loss of time caused by it; and it might come within that class of cases where the readiness of the plaintiff to perform his part of the contract, being for personal services, would entitle him to the full value of the board and produce of the farm, without any deduction for the plaintiff's labor in carrying on the farm; at least, such seems to be the doctrine in respect to contracts for the hire of clerks, agents, laborers, domestic servants, and others, for a year or shorter period, unless the defendant can show that the plaintiff was actually engaged or offered similar employment.    2 Greenl. Ev. 261, a, and note.

But the court went farther, and instructed the jury that they might take into consideration the loss sustained by the plaintiff in the sale of his property, evidence having been received that he sold it at a sacrifice. If this sacrifice could be regarded as within the terms of the agreement, that is, if it could be found that a sale was contemplated by the agreement at all events, whether at a sacrifice or not, then a loss sustained in that way might, perhaps, properly be considered in assessing the damages; but in this case, to say the least, it is not made to appear that such was the contract, so clearly as to justify the unqualified instructions that such losses were to be considered in making up the damages. Beside, the declaration does not specify these losses as grounds of the plaintiff's claim to damages; and unless they are deemed necessarily to result from the breach by the defendant, they should be specially stated, in order to apprize the defendant of the facts intended to be proved. 1 Ch. Pl. 338–395; 1 Saund. 243, c, note 5. Whether such losses could, in any mode of pleading, be included in the damages, must depend upon the character of the agreement as found by the jury; and we think it is quite clear that they might, on this testimony, have found it such as not to give the plaintiff the right to claim for such losses in any form.

The other questions raised are not material, as the verdict is to be set aside, and they may not again arise; although it may be suggested that the agreement made, after the plaintiff came on, to furnish meat, drink and breadstuffs for the family, if that is relied on, may not be in entire conformity with the declaration, which may need to be amended.

*Verdict set aside.*